[Civ. No. 17499.   Second Dist., Div. Two.   Nov. 2, 1950.]

STANLEY CURTIS JOHNSON, Respondent, v. ROBERT
LLOYD WILLIAMS et al., Appellants.

C. F. Jorz for Appellants.

Atus P. Reuther and Clyde C. Shoemaker for Respondent.

McCOMB, J.—From an order granting plaintiff's motion
for a new trial after a verdict had been rendered in favor of
defendants by a jury in an action to recover damages for
negligence, defendants appeal.

*Facts:* On March 29, 1947, plaintiff was driving a sedan
in a westerly direction on Oxnard Street in San Fernando

Valley. At the same time defendant Robert Lloyd Williams was driving a convertible in the same direction on the same street. Plaintiff attempted to pass the convertible and while so doing the two cars collided, the car in which plaintiff was riding forcibly striking a pole, with the result that plaintiff received personal injuries. There was a conflict in the evidence as to whether plaintiff had been drinking prior to the accident and as to whether he was driving his car at an excessive rate of speed, as well as whether he had sounded his horn before attempting to pass defendants' car.

Plaintiff's motion for a new trial was granted on the following grounds, among others:

"1. Irregularity in the proceedings of the court by which the plaintiff was prevented from having a fair trial.

"2. Irregularity in the order or orders of the court in connection with the argument of the cause before the jury by which the plaintiff was prevented from having a fair trial.

"3. Irregularity in the proceedings of the court and the order or orders of the court and abuse of discretion by which the plaintiff was prevented from having a fair trial."

■ *Question: Did the trial court err in granting plaintiff's motion for a new trial?*

This question must be answered in the negative. Under the testimony in the present case the question of the permissible speed at which automobiles might lawfully travel on Oxnard Street at the time and place of the accident was involved. During the course of plaintiff's opening argument to the jury his counsel directed attention to the evidence that Oxnard Street upon which the accident occurred ran east and west; was not posted with signs restricting the speed limit; that there were no traffic signals along the street; and referred to the fact that the place at which the accident happened was in a 55-mile zone, and that the prima facie speed limit at the place of the accident and on each side thereof was 55 miles per hour. Whereupon defendants' counsel interrupted and the following colloquy took place between court and counsel:

"Mr. Jorz: I submit, if your Honor please, that that is prejudicial, that remark about fifty miles an hour or fifty-five miles an hour. The evidence is undisputed that is all residences in there.

"Mr. Shoemaker: If your Honor please, that is a matter that the jurors must consider.

"The Court: The jurors will take their law from the Court and not from counsel. There is no fifty-five miles an hour limit in this case. The Court will instruct you on the speed law at the proper time."

Thereafter plaintiff proceeded with the argument and again referred to the fact that the place where the accident occurred was not posted with signs designating the speed limit for a distance of two or three miles; that there were no boulevard stop signs regulating traffic; and no automatic traffic signals of any kind. Again counsel for defendants interrupted and the following colloquy transpired:

"Mr. Jorz: Counsel insists upon talking about no regulation of speed limits. I submit it is inflammatory. It is prejudicial because it is wholly inconsistent with the instructions that the Court will give with respect to that. The inference is a man can drive as fast as he wants and I submit that is not the law in this case.

"The Court: The Court has told the jurors once or twice and now puts it in a little different form: These prima facie speed limits that apply to criminal cases do not apply to these civil actions. We are governed by the basic speed law which will be given in your instructions. Proceed Mr. Shoemaker. (Further argument.)

". . . The officer testified that there were no signs regulating the speed on Oxnard.

"Mr. Jorz: I assign that remark as misconduct.

"Mr. Shoemaker: That is the testimony in the case.

"The Court: No. The court excluded any testimony on the subject of whether the street was signposted and the jurors are instructed to disregard any argument to the effect that the street was not signposted.

"Mr. Shoemaker: Your Honor, I recall that when Mr. Everman was testifying he was permitted to testify that all the way from Laurel to Hazeltine there was no signposting on Oxnard regulating traffic on Oxnard.

"The Court: There is no such evidence in the record. You will proceed, Mr. Shoemaker.

"Mr. Shoemaker: I am sorry, your Honor. That is my recollection of the testimony.

"The Court: You can take all the exceptions you want. You will proceed. There is no such evidence.

"Mr. Shoemaker: I am sorry but that is my recollection of it. Now there is no evidence that anywhere along on Oxnard

there was any sign, so far as that goes, nothing proven by the other side.

"Mr. Jorz: I assign the repeated remarks about signs and sign posting as misconduct in view of the Court's admonition.

"The Court: Read that last sentence.

(Record read.)

"The Court: The jurors are again instructed to disregard any argument revolving around the question of whether there were any speed signs on that street or not. Now, that is enough of that argument, Mr. Shoemaker.

(Further argument.)

"The Court: Ten minutes recess. Remember the admonition.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"Mr. Shoemaker: If your Honor please, we have examined the record, the testimony of last Thursday and we respectfully ask your Honor to be permitted to present the few portions of the evidence on which I based my argument with respect to what the evidence showed as to sign posting along Oxnard Street.

"The Court: There is no evidence concerning sign posting relating to speed. If the jurors are in doubt about any portions of the evidence, after they retire to deliberate, they may return into court and have such portions read to them. You will proceed with your argument, Mr. Jorz."

The witness, George L. Everman, a police officer had testified during the trial among other things, as follows:

"By Mr. Shoemaker: Q. As of March 29, 1947 and prior thereto were you familiar with the highway known as Oxnard Street involved in this case all the way from Hazeltine on the west to Laurel on the east? A. Yes, sir.

"Q. That would cover how much distance? A. Between two and two and a half miles. Well, Hazeltine would be about three miles, including Hazeltine.

"Q. And Laurel would be how far east of Woodman? A. Between two and two and a half miles.

"Q. Throughout that entire length from Laurel on the east to Hazeltine on the west, state whether or not Oxnard was entirely open so far as speed was concerned with respect to any signs, any sign posting.

"Mr. Jorz: Objected to as immaterial whether there was or was not.

"The Court: Sustained."

The statements and directions of the trial judge to the jury to the effect that there was no prima facie speed limit

and that prima facie speed limits applied to criminal cases but did not apply to civil actions was an erroneous statement of the law. Section 511 of the Vehicle Code reads in part as follows: *"Speed not in excess of limits lawful unless clearly violative of basic rule.* The speed of any vehicle upon a highway not in excess of the limits specified in this section or established as authorized in this code is lawful unless clearly proved to be in violation of the basic rule declared in Section 510 hereof. . . .

*"Prima facie limits: Applicability: Signs noticing changed limits.* The *prima facie* limits referred to above are as follows and the same shall be applicable unless changed as authorized in this code and, if so changed, then only when signs have been erected giving notice thereof, in which event the speed designated on the sign shall be the *prima facie* limit: . . .

" (c) *Fifty-five miles per hour* under all other conditions unless a different speed is established as provided in this code and signs are in place giving notice thereof."

The speed limits above specified have been referred to by the courts as permissible speed limits. (*Laine* v. *Weddell*, 76 Cal.App.2d 610, 613 [173 P.2d 567] ; *Noble* v. *Kertz & Sons Feed etc. Co.*, 72 Cal.App.2d 153, 157 [164 P.2d 257] ; see, also, *Burch* v. *Valley Motor Lines, Inc.*, 78 Cal.App.2d 834, 846 [179 P.2d 47].) ▇ When there is not a violation of these permissive limits in civil cases, the rate of speed is not unlawful or negligent unless proved to be in violation of the basic rule declared in section 510 of the Vehicle Code. (*Olson* v. *Union Oil Co.*, 25 Cal.App.2d 627, 629 [78 P.2d 446] ; *Cavalli* v. *Luckett*, 40 Cal.App.2d 250, 252 [104 P.2d 708].)

In view of the facts in this case the prima facie speed limit on Oxnard, the street where the accident occurred, was 55 miles per hour. Such was the permissive speed limit. Standing alone and without being shown to be in violation of the basic rule declared in section 510 of the Vehicle Code,* such speed was lawful and not negligent. Plaintiff's counsel clearly had the right to discuss the evidence and to argue the facts as to the applicable speed limit, and the jury should have been properly instructed by the court on that subject. Instead, the trial judge erroneously advised the jury (1) that

---

*Section 510, Vehicle Code reads thus: ''No person shall drive a vehicle upon a highway at a speed greater that is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.''

there was no 55 miles per hour limit in the case, and (2) that "these prima facie speed limits that apply to criminal cases do not apply to these civil actions. We are governed by the basic speed law which will be given in your instructions." The jurors were instructed to disregard any argument to the effect that the street was not signposted, and they were also instructed to disregard any argument pertaining to the question as to whether there were any speed signs on the street. ▆ Since there was no evidence introduced that Oxnard Street was signposted, in order to bring it within the category of a residence or business section, it was conclusively presumed to have been outside of a business or residence district. (Veh. Code, § 758; *Noble* v. *Kertz & Sons Feed etc. Co., supra,* 157 et seq.)

In view of the fact the trial judge determined that the foregoing errors were prejudicial his order granting the new trial must be affirmed, and it is so ordered.

Affirmed.

Moore, P. J., and Wilson, J., concurred.