[Civ. No. 14320.   First Dist., Div. One.   Dec. 18, 1950.]

MARIAN ANDERSON, Respondent, v. CARL NEWKIRCH, Appellant.

Joseph T. O'Connor and Harold H. Cohn for Appellant.

Michael L. Haun, Philander Brooks Beadle and Patrick Joseph O'Reilley for Respondent.

WOOD (Fred B.), J.—Defendant appeals from the judgment entered upon a verdict rendered against him in an action for damages for personal injuries sustained by plaintiff while riding as a nonpaying guest in an automobile driven by defendant.

Appellant assigns as error: (1) The evidence is insufficient to support the implied finding of wilful misconduct, (2) the admission of evidence of the so-called "speed limit" on the San Francisco-Oakland Bay Bridge, where the accident occurred, and (3) the overruling of objections to various questions asked of defendant upon cross-examination.

On the question of the sufficiency of the evidence in a case such as this, the inquiry starts with a consideration of the respective rights and duties of the parties, the guest and the driver. The applicable statute declares that, "No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride . . . has any right of action for civil damages against the driver of such vehicle . . . on account of personal injury to . . . such guest during such ride, unless the *plaintiff* in any such action *establishes*

*that such injury . . . proximately resulted from the . . . wilful misconduct of said driver."* (Veh. Code, § 403; emphasis added.)

We observe in this statute two elements: Proximate cause, as in a negligence action; "wilful misconduct," a standard of care peculiar to this type of action. "Misconduct" denotes doing that which should not be done or failing to do that which should be done. "Wilful" denotes intentional action or inaction, either with knowledge, express or implied, of probable consequences or with wanton and reckless disregard of possible consequences.

It follows that this statute imposes upon the driver of an automobile, toward such a guest, the duty of not intentionally doing that which should not be done or intentionally failing to do that which should be done, with knowledge, express or implied, that injury to his guest will probably result or with wanton and reckless disregard of the possibility that injury to his guest may result. (See *Cope* v. *Davison,* 30 Cal. 2d 193, 198 [180 P.2d 873, 171 A.L.R. 667].)

The question, then, is: Does the evidence support the implied finding of the jury that appellant violated this duty, as driver, toward respondent, his guest, and that her injury proximately resulted therefrom?

The accident occurred shortly after midnight on December 21, 1946. Appellant was operating his automobile on the San Francisco-Oakland Bay Bridge and respondent was riding with him as a guest. They were returning from a trip to Modesto, having left San Francisco at approximately 9 o'clock of the morning of December 20. Appellant did all of the driving. After leaving Modesto they stopped at Niles for dinner, then drove to appellant's home in Oakland, where they addressed Christmas cards until 11:45 in the evening, went to the Oakland post office, mailed the cards shortly before midnight, and then commenced the trip across the bridge. Respondent testified that she estimated appellant's speed on the bridge, just prior to the accident, at from 60 to 65 miles per hour; he testified his speed was between 40 and 45 miles per hour. The accident occurred when appellant's car collided with the rear end of an automobile which was stopped on the bridge, in the outside lane next to the curb. He testified that he first saw the stopped car when about 200 feet away, but could not tell what it was; as he approached he saw it was a car, could not see taillights on it and could not tell whether it was moving or not; and when about 50 feet

away he realized the car was stalled, applied the brakes and started moving to his left; that his car after the impact went forward not more than 6 or 7 feet and pushed the other car forward between 10 and 15 feet. The driver of the stopped car testified that it was stopped from two to five minutes before the collision, he having parked it next to the curb because of a flat tire; that the taillight on the left rear fender was burning, as was the light over the license plate in the center of the rear; that he was about 120 to 200 feet to the rear of his car when he saw appellant's car go by, having gone to the rear to signal oncoming cars; that he could not estimate appellant's speed other than as "fairly fast"; that the collision was from eight-tenths to nine-tenths head-on; that he heard the squeak of the brakes of appellant's car and observed that appellant started to turn out when appellant's car was about 15 feet from the parked car; that his was a 1939 Ford in good condition, just having been overhauled; that he had applied the hand brakes of his car and it was in low gear at the time of the accident; that his car was pushed forward about 15 feet by the force of the impact and was a total loss; and that traffic on the bridge at the time was moderate or medium.

Appellant testified that at the time of the collision he was traveling about 25 miles an hour; that there was considerable traffic coming from San Francisco and that there was quite a glare from the headlights of those cars.

Respondent testified that while traveling to Modesto appellant at times drove over 60 miles an hour; that he would approach cars closely and not attempt to stop until close behind them; this made her nervous and once during the course of the drive she called to his attention the way in which he would approach cars and not attempt to stop until he was very close to them; that she constantly was putting her feet on the floor as though she were putting on the brakes, and after she had done this a number of times he asked her if she was nervous, to which she replied, "I don't see why you don't start to stop before you approach the cars so closely," to which he responded, "Well, if one knows his car that's all right"; that on the way from Modesto to Niles he drove 60 to 65 and at one time 70 miles per hour, and that on the way from Niles to Oakland he once traveled 75 miles an hour; that at the time of the collision she was sitting sidewise, to avoid looking at the road because his manner of driving made her nervous.

Appellant testified without objection, on cross-examination, by respondent under section 2055 of the Code of Civil Procedure, that at the time of the accident he knew the speed limit on the bridge, knew it was dangerous to drive anywhere in excess of the speed limit, was familiar with traffic conditions on the bridge, the lanes on the bridge are quite narrow, people cut from one lane to another, it was dangerous to exceed the speed limit under the conditions and at the time of the accident, that if he exceeded the speed limit there would be a probability of a collision with another automobile.  In response to the question, "Well, now, Mr. Newkirch, you did know at that time and place that if there was a collision while your automobile was traveling in excess of the speed limit fixed by law, you knew that there was a likelihood of serious injury to your passenger, did you not?" he testified, without objection, "I certainly know that if I drove at an excessive rate of speed there would be more danger of an accident than any other way"; followed by the question, "Of course, then, the answer to my question I just asked you is 'yes,' is it not?" and answer, "Yes, if it has any bearing on the case, yes, I knew that."

The jury also had before it the testimony, later given on cross-examination, under section 2055, which appellant claims was erroneously admitted.  To avoid repetition when considering the propriety of the court's rulings, we indicate parenthetically what objections, if any, were interposed.  Asked what was the speed limit to his knowledge at the time of the accident, he said "Forty-five miles an hour" (objection: immaterial, and calls for opinion and conclusion of the witness on a matter of law) ; asked if he did not know at the time of this accident that the speed limit on the bridge was not 45 miles an hour but was 35 miles an hour, he responded, "I am not sure whether it was forty-five or thirty-five; wartime speed was thirty-five, I know that" (objection: immaterial, and assuming something not in evidence) ; asked if yesterday he stated that to exceed the speed limit in driving across that bridge would be likely to result in a collision, he answered, "Yes, the probabilities were, yes" (objection: assumes something not in evidence).  Asked if he knew, as he drove across the bridge immediately preceding the accident, to exceed the speed limit would probably result in a collision, he responded, "I would under certain conditions like in congested areas, say it might cause an accident" (objection: calling for opinion and conclusion of the witness as to an ultimate fact to go to

the jury); asked if it would probably cause an accident, he answered "Possible" (no objection); asked if he knew that if an accident did result under the conditions described, namely, his exceeding the speed limit, that traveling at that speed there would probably be injuries to himself or his passenger, he responded, "No, no" (no objection); asked if he thought there could be a collision of automobiles at that speed and injury to his passenger would not be probable, he said, "Collision, yes. But that is not saying you are going to have a collision because you are driving 45 miles an hour"—"No reason you are going to have to expect a collision every time you cross that bridge at 45 miles an hour" (no objection); asked if he had not just said he would expect one to be probable, he responded, "Not to be probable—possible" (no objection); followed by the question, "You just said so," to which he replied, "Yes, there is a probability" (no objection).

An officer of the state highway patrol testified that there were signs on the bridge indicating the prima facie speed limit; there were signs on the Fifth Street ramp eastbound and on the San Francisco anchorage eastbound (immediately easterly of the ramp which enters the bridge from Fremont Street), and an eastbound sign approximately 300 yards east of Treasure Island; that the westbound signs were located at the foot of the incline heading west, and a sign at the Yerba Buena anchorage headed west; each sign was about 2½ feet square; they were white signs with black lettering and the new signs are black with white lettering; the signs read, "Speed Limit 35 Miles Per Hour." (To all of this testimony concerning signs, appellant objected: it is incompetent, irrelevant and immaterial; the only speed limit is that provided by section 510 of the Vehicle Code, that which is reasonably proper, having due regard to traffic, and that to permit testimony as to any speed limit is error.)

It would appear that from this evidence the jury reasonably might find that the injury proximately resulted from the wilful misconduct of the driver: driving at nearly twice the prima facie speed limit, at night, on a bridge where the lanes are quite narrow and people cut from one lane to another, with considerable traffic coming toward the driver and quite a glare from the headlights of those cars; a driver who frequently exceeds the prima facie speed limit and when approaching another car does not start to stop his car until very close, despite the fact that the hazard thereby involved is brought to his attention by the conduct and protests of

his guest; coupled with the driver's own testimony that he knew the prima facie speed limit, that he was familiar with traffic conditions on the bridge, knew it was dangerous to exceed the speed limit under the conditions and at the time of the accident and that there would be a probability of a collision with another automobile, and that if there were such a collision there was a likelihood of serious injury to his passenger.

This is not a case in which it may be said as a matter of law that the injury resulted, or that it did not result, from wilful misconduct of the driver. It is not a case of excessive speed unaccompanied by circumstances indicating wanton disregard of the safety of a guest, hence unlike *Robertson* v. *Brown*, 37 Cal.App.2d 189 [99 P.2d 288]. It is not the case of a mere failure to perform a statutory duty unaccompanied by circumstances disclosing either express or implied knowledge that probable injury to a guest in the car would result, as was the case in *Porter* v. *Hofman*, 12 Cal.2d 445 [85 P.2d 447] ; nor is it the case of a car driven within the prima facie speed limit but too close to a car ahead to stop in time to avoid a collision when the car ahead stopped suddenly without warning, which in *Horn* v. *Volko*, 13 Cal.App.2d 582 [57 P.2d 175], was deemed mere negligence.

The instant case is more like that of *Wright* v. *Sellers*, 25 Cal.App.2d 603 [78 P.2d 209], in which the court found the evidence sufficient to support the implied finding of wilful misconduct upon which the verdict for plaintiff depended. The facts which furnished that support were "that defendant drove his automobile at a speed of almost seventy miles an hour into a curve, when the shoulders of the road on each side of an eighteen-foot pavement were wet and soft, justified the conclusion of the jury that he either knew or should have known that a serious accident and injury to his guest would be probable results." (25 Cal.App.2d, at p. 611.) Similarly, in *Van Fleet* v. *Heyler*, 51 Cal.App.2d 719 [125 P.2d 586], evidence that the accident occurred at night, while the moon was hidden by clouds; that the pavement was only 20 feet wide, it had soft shoulders and a wavy, sometimes rough, surface; that a considerable amount of traffic passed over the road; that just a few minutes before the accident defendant had a definite warning that the road was not entirely empty, and that other travelers did not all carry lights, when he came suddenly on an unlighted wagon and had to make an abrupt turn to avoid it, in spite of which he accelerated his speed

and maintained or increased it to nearly twice the prima facie limit, presented facts for determination of the jury on the issue of wilful misconduct. Of similar import is *Hastings* v. *Serleto*, 61 Cal.App.2d 672 [143 P.2d 956], in which it appeared that the driver was traveling at a rapid rate of speed over a narrow, winding, mountain road, through a steepwalled dark canyon, was aware that he was approaching a double curve, that there were trees on both sides of the road close to its edge, and that there were other vehicles on the road.

In support of his claim that the court erred in admitting testimony that the bridge was signposted for a prima facie speed limit of 35 miles, appellant claims the only speed limit is that prescribed by section 510 of the Vehicle Code, that "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property"; that to permit evidence of a specific speed limit is to confuse the jury and nullify section 510; that section 513 of the code declares that proof of speed in excess of a prima facie limit does not establish negligence as a matter of law, it being necessary to establish as a fact that the operation of a vehicle at such excessive speed constituted negligence; and that *Anderson* v. *Mothershead*, 19 Cal.App.2d 97 [64 P.2d 995], held it error for a trial court to instruct on the prima facie speed limit expressed in section 511 of the code.

This point is not well taken. Although a prima facie speed limit does not establish wilful misconduct, nor even mere negligence, as a matter of law, it is a factor proper for consideration with other pertinent factors, in determining the issue of wilful misconduct. (*Van Fleet* v. *Heyler, supra,* 51 Cal.App.2d 719, 727; see, also, *Johnson* v. *Williams,* 100 Cal. App.2d 294 [223 P.2d 266].) *Anderson* v. *Mothershead, supra,* does not support appellant's contention. It involved, and declared erroneous, an instruction which told the jury that driving in excess of the prima facie speed limit is negligence unless defendant establish by competent evidence that such speed was not in violation of the basic speed law. That, certainly, was not a holding that evidence of a specific speed limit, under proper instructions, is error.

It was not error to admit, over appellant's objection, his testimony concerning his knowledge of the speed limit on the bridge and his knowledge of the probability of an accident

if he exceeded that speed limit under the conditions which existed at the time of this accident. That was quite pertinent to appellant's mental attitude and knowledge of the probable consequences of his conduct, confined as it was to his state of mind prior to and contemporaneously with the accident. (*Cope* v. *Davison, supra*, 30 Cal.2d 193, 200-202; *Hastings* v. *Serleto, supra*, 61 Cal.App.2d 672, 690.) Incidentally, at the trial appellant objected to but a portion of the questions to which he now objects, and earlier during the trial had answered without objection questions which were the same in all material respects as those which he now claims were improperly propounded.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.