[Civ. No. 18137. Second Dist., Div. One. Aug. 22, 1951.]

CAROL JEAN SANTMAN et al., Respondents, v. PARKER CLARKE SMITH, Appellant.

James V. Brewer for Appellant.

Delvy T. Walton and Henry G. Bodkin for Respondents.

DORAN, J.—The present action was instituted by the respondents to recover damages for personal injuries to Carol Santman arising out of an automobile accident on Coast Highway No. 101 near Newport Beach, California, when Miss Santman was a guest in the automobile of the appellant Parker Clarke Smith. Wilful misconduct and intoxication were charged against the defendant Smith. Negligent operation of a tow truck, with which the Smith car collided, was charged against the owner and driver of the tow car, McCartney and Allen by name.

A jury returned a verdict of $15,000 in favor of plaintiff Carol Santman, and $720 in favor of Miss Santman's father, but found in favor of the defendants McCartney and Allen. There were special findings to the effect that the defendant

was guilty of wilful misconduct but not guilty of intoxication. The present appeal is from that portion of the judgment ''based upon the special findings . . . that the said defendant . . . was guilty of wilful misconduct in his driving . . . , that plaintiff was aware of such wilful misconduct and that she did not have an opportunity to avoid it.'' It is contended that wilful misconduct was not proven; that the trial court erred in instructions given and refused, and that the court's comments on the evidence were improper.

It appears from the record that a group of boys from Claremont Men's College had taken their girl friends to a beach party at Corona del Mar on the evening of October 8, 1948. The respondent Carol Santman was invited by the appellant, and in company with two other couples, arrived at the beach about 8 p. m. in appellant's new Ford car. The three boys had purchased beer and whiskey, and according to some of the testimony appellant, during the evening, had consumed from 15 to 17 cans of beer and a considerable portion of a fifth of bourbon. Smith, however, claimed to have had only two or three cans of beer, and two drinks of whiskey, the last drink of whiskey being taken just previous to starting home about 10:30 p. m. Just before the accident, appellant while driving, had a can of beer in one hand.

There is a conflict of testimony as to the effect of appellant's drinking. Appellant, claiming there was no intoxication, nevertheless testified in reference to the influence of liquor, that ''I had felt in communication with the general party spirit prior to that, probably an hour prior to leaving the party. . . . at 9:30 I had probably with what was going on around us I probably was feeling pretty good,'' and ''not from smelling the people's breaths.''

There is evidence that respondent Carol Santman and the other young lady who occupied appellant's car on the return trip were worried because of appellant's condition; he had staggered on the sand and appeared to be intoxicated; and wished to have the other boy in the party, Robert Blakey, drive home. This angered the appellant who said, ''It is all right. I am not drunk. Let me alone. I am not drunk. . . . See, I am standing up. I am not drunk.'' Robert Blakey said that ''Mr. Smith was all right, that he could drink and hold his liquor.'' With this assurance the girls got in the car. Blakey, admitting to partial intoxication, had had the same amount of liquor as had the appellant.

The first part of the route ''was so winding that he couldn't

have gotten up any speed there," but upon arriving· at Highway 101 appellant started driving fast, increasing the speed from about 50 to 75 miles per hour according to Miss Santman who was watching the speedometer. The two girls asked appellant to slow down, and Miss Santman asked permission to get out of the car. Appellant said, "No, I am all right," and "didn't even slow down," or stop at any time between that point and the accident. Appellant's driving was described as lacking coordination.

Shortly thereafter, Miss Santman saw two blinking red lights on the tow car at the side of the road and screamed, "Smitty, stop, look out." Appellant, according to Miss Santman, "seemed to be paralyzed, he didn't say or do anything, he just held the wheel straight and at the very last second he swerved the car throwing the full force on my side of the car."

The right front of appellant's Ford then collided with the left rear of the tow truck, the latter having just pulled a Chevrolet out of the sand at the side of the road. After the accident the truck had its left wheel about a foot onto the concrete slab. The two blinking red lights of the tow truck were visible for a considerable distance and were seen by the driver of another car which was following the appellant's car. The blinking lights were also seen by the two girls and were not directly in front but towards the right side of the road. The weather was clear, the highway was dry, and there was no interfering traffic.

Appellant's statements made shortly after the accident are worth noting. The record discloses such statements to the effect that appellant did not see the tow truck or the red lights and didn't know "how he happened to hit it"; that appellant saw some lights but thought they were airplane beacons or lights on an oil derrick; that "he believed the tow truck was backing up on the highway . . . at the rate of about 20 miles an hour." All other witnesses testified that the truck was standing still at the side of the highway when hit.

Smith further stated that "he didn't put on the brakes because he was going so fast he was afraid he would turn over." Appellant asked the truck driver "where the red lights were and why the truck was on the highway," whereupon the driver pointed out the lights and stated that the lights had been burning all the time. The driver smelled "a whiff" of liquor on appellant's breath; Smith was also "pretty belligerent."

There was evidence that appellant's car hit the parked tow truck weighing some 7,000 pounds, with such force as to drive the tow truck forward about one truck length, badly damaging both the truck and the disabled Chevrolet which the tow truck was assisting. The impact of the collision threw Miss Santman's head through the windshield causing severe bodily injury. Approximately 100 sutures were required to sew up respondent's face and neck, and permanent scars will be left.

Consideration of the evidence above mentioned, and of other items of proof contained in the record, leaves no doubt that, whatever conflict of evidence may be present, there is substantial evidence in support of the verdict and judgment. Without regard for appellant's condition induced by drinking which the jury found did not amount to intoxication, there was evidence of erratic driving, of excessive speed (70-75 miles per hour) and refusal to slow down upon the passengers' request or to let respondent out. There was evidence that, notwithstanding the blinking red lights clearly visible to others, appellant drove directly into the tow truck, and did not apply the brakes. From such evidence the jury concluded that the appellant driver was guilty of wilful misconduct, defined in *Hastings* v. *Serleto,* 61 Cal.App.2d 672, 682 [143 P.2d 956], as being present "if he intentionally does an act with wanton and reckless disregard of its possible result" and without regard for the safety of the passengers being carried.

Whether or not the driver of an automobile has been guilty of wilful misconduct entailing liability for injury to a guest, depends, obviously, upon the peculiar facts of the particular case. While it is doubtless true, as appellant states, that speed alone does not necessarily amount to wilful misconduct, it is also true that excessive speed is an important element to be considered by the jury along with the other surrounding circumstances in arriving at a decision of this question of fact.

The present case, although in no manner identical as to facts, is not fundamentally different from *Anderson* v. *Newkirch* (1950), 101 Cal.App.2d 171 [225 P.2d 247], where defendant drove the car at a high rate of speed into the rear end of an automobile which, having a flat tire, had stopped on a bridge and in the outside lane. Affirming a judgment in favor of plaintiff, a guest, the reviewing court held that it was "not a case in which it may be said as a matter of law that the injury resulted, or that it did not result, from wilful misconduct of the driver," but was "more like that of

*Wright* v. *Sellers*, 25 Cal.App.2d 603 [78 P.2d 209], in which the court found the evidence sufficient to support the implied finding of wilful misconduct."

█ The jury's special finding that Carol Santman was "in a situation where she reasonably could (not) by act or word have avoided the injury which befell her," was likewise supported by substantial evidence. There was evidence of Miss Santman's efforts to have someone else drive the car because of appellant's condition, of further efforts to have appellant slow up and stop, and of appellant's refusal of such requests which were answered by increased speed. Miss Santman had no other way of getting home.

Cases cited by appellant in which the injured passenger indulged in a drinking carousel are, of course, inapplicable since in the present case it is not contended that the respondent was under the influence of liquor. There was evidence that Miss Santman did not drink on the evening in question. Other cases mentioned in appellant's brief are concerned with factual situations entirely different from those here involved.

█ Appellant's contention that the trial court improperly commented upon the evidence is without merit. The jury was instructed that "such comment not only is not binding upon you, but it is your right and duty to decide for yourself the disputed questions of fact in this case." No prejudicial error was committed in reference thereto.

Complaint is also made in reference to instructions given and refused. It is appellant's position that a certain instruction as to negligence although "not wrong as far as it goes," is "not complete in the form given," and implies that "any conduct greater than a lack of ordinary care is wilful misconduct." Appellant also avers that "the court gave instructions, in legalistic language which we think no juror in the land would really understand, defining wilful misconduct."

An examination of the instructions given and refused, and of the charge as a whole, fails to reveal any prejudicial error warranting a reversal. █ It is fundamental that instructions to a jury must be considered as an entirety, and that the merits of one instruction cannot be fairly appraised by lifting it from the context. The instructions were, of necessity, couched in "legalistic" terms, and various phases of the issues involved were necessarily treated in separate instructions. Criticism in this respect is without merit. The record

discloses substantial evidence in support of the verdict and judgment, and no reversible error is apparent.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied September 11, 1951, and appellant's petition for a hearing by the Supreme Court was denied October 18, 1951. Edmonds, J., voted for a hearing.