[Civ. No. 22472. Second Dist., Div. One. Apr. 28, 1958.]

REINALDO MARQUEZ, Appellant, v. JOHN ORTIZ et al., Respondents.

J. B. Tietz and Edward Raiden for Appellant.

Schell, Delamer & Loring for Respondents.

WHITE, P. J.—Plaintiff appeals from a judgment after verdict of the jury in favor of defendants in his action for damages for personal injuries.

Plaintiff came from Mexico about 20 years before, was about 63 years of age at the time of the accident, was partially deaf, and had little knowledge of English. He testified with the assistance of interpreters. His is the only "eyewitness" account of the accident.

Briefly, his account is that on February 8, 1954, and for some time before that, he lived on Central Avenue near Terminal Market. On that day, before 7 a. m., he walked from his home to the market to look for work. He talked with Mr. Ortiz, "the boss," who said "to move those vegetables that was there," and then he started to work "raising crates over to the truck." The accident happened about 9:30 a. m. "There was two trucks. First, one truck came in, and we loaded that truck. Then after that, the second truck came in, and we were loading that one, and that was when I was injured."

He further testified that when he was injured he was raising the crates for the truck, and standing close to the truck, about a distance of a half-a-yard, and continued as follows:

"Q. What happened that injured you? A. What happened is this: That one of the panels of that truck fell, and when this panel of the truck fell, it fell—it got loose, and it fell about the same time that we was loading one of the crates into the truck.

"Q. What happened with the panel? A. Well, it fell on my head, and squashed my head.

"Q. What happened to the crate of cabbages that you were then loading? A. We threw that crate up.

"Q. What happened when the panel fell on your head?

What happened next? A. Well, after that, I didn't know any more. . . . I didn't know any more, because the weight set me down . . . Well, it set me in the same place, on the cement that was there . . . I remember setting there because I got dizzy. My head was turning around . . . I believe I remained sitting there about 10 or 15 minutes. It was anyway until another worker came up, and helped me up.''

On cross-examination he testified that for about three months before the accident he had worked throwing crates up in the trucks for several employers, including the defendant Ortiz, and continued as follows:

''Q. During this three months when you had been throwing crates up in the truck at the Terminal Market or Central Market, had you ever seen anyone take a gate from the truck and put it over on the other side?

. . . . . . . . . . . . . .

''Yes. I have seen that done, and even myself, I have done that, taken those gates out and put them out, yes.

''Q. How many times had you done this yourself?

. . . . . . . . . . . . . .

''A. I could not give you an estimate of how many times I did remove any of those, because that is done continuously all day long in all the trucks; even when I have to put the crates of oranges or apples, or any other kind of a crate . . .''

He testified that he did not move the gate on the morning of the accident and he does not know ''who put it''; and continued:

''Q. Before the accident happened, do you remember seeing the tail gate situated on the other side of the truck? A. I am not sure if I saw it or if I did not see it. The only thing I remember is when the time that I saw that gate coming towards me.

''Q. How much time was there between the time that you put the last crate up on the truck and the time when the gate came down? A. Well, I believe a second. I believe a minute.''

In his deposition taken under oath some time before the trial the following appears:

''Q. When the accident happened, did you have a crate in your hand at that time? A. Yes.

''Q. What happened to the crate when the accident happened? A. We threw it upwards and when it fell there, the crate fell there and then the block came and hit me here.

. . . . . . . . . . . . . .

"Q. What hit you? A. The gate of the truck.

. . . . . . . . . . . . . .

"Q. Mr. Marquez, were you lifting these crates by yourself or were you working with someone else who was helping you lift these crates? At the time of the accident?

. . . . . . . . . . . . . .

"A. When we lifted those crates, we took those crates, two of us, raised those crates. . . ."

Plaintiff does not remember the name of the worker who was lifting the crates with him. He saw the gate coming down, but at the time that the gate was coming down, "we was throwing this crate over the top of the truck."

The jurors were given photographs of the truck, and a demonstration of the position of the gates on the truck itself. Plaintiff marked a photograph and also the ground beside the truck to show where he was standing, "about two feet from the side of the truck" so he would be able to have room to throw the boxes.

A few years before the accident, plaintiff was with a number of cotton pickers in a truck when it turned over in a collision.

He was then hit on the head.

While plaintiff's testimony would support a judgment in his favor, we cannot say as a matter of law that inferences could not be drawn therefrom also supporting findings that plaintiff was not injured by the falling of the gate on defendants' truck; that defendants' employees were not negligent in their handling of the gate; or that plaintiff was negligent in placing himself where he could be hit, and in throwing a crate on to the truck so carelessly as to cause the gate to fall.

The testimony of the other witnesses, if believed by the jury, negates most of the statements made by plaintiff, except as to the fact that his neck had been injured that day or prior thereto. According to employees of defendants and defendants themselves, plaintiff was not working for or with them. He did not put any crates of cabbage onto the truck. Those witnesses were working on or near the truck and none of them saw plaintiff in the vicinity of the truck until after the gate was heard to fall. No one knows what caused the gate to fall. Seconds after it fell, it was seen flat on the bed of the truck extending over the side only about two inches. According to plaintiff's testimony he was 18 to 24 inches from the truck.

After the "falling of the gate" on the truck bed, plaintiff's statement that it had hit him, and the driver's telling plaintiff

that he did not believe him, plaintiff walked home and thereafter went by public transportation to Georgia Street Receiving Hospital and later to Los Angeles General Hospital where he was treated. While there is no witness who says he saw "the falling of the gate" and that it could not have hit plaintiff on the head, neither is plaintiff's time before and after "the falling of the gate" so accounted for that he could not have been injured in some other manner. The record contains no medical opinion or other evidence to the effect that one's neck could be so injured from a blow on top of one's head by a 75-pound "gate" without leaving any trace of the blow on the top of his head.

Appellant urges that in the instant action, the questions of negligence and contributory negligence are questions of law—not fact—and that the submission of those questions to the jury was reversible error. Cited and relied upon in this connection, are *Pierce* v. *Black*, 131 Cal.App.2d 521, 524 [280 P.2d 913] ; *Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 183 [258 P.2d 834] ; and *LeBlanc* v. *Browne*, 78 Cal.App.2d 63, 75 [177 P.2d 347]. Those decisions involve injuries caused by violations of traffic laws and were not made upon conflicting evidence.

As stated by the Supreme Court in *Gray* v. *Brinkerhoff, supra*, at page 183, ''Whether or not defendant was guilty of negligence . . . or plaintiff was guilty of contributory negligence . . . is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented.''

Defendants' negligence, if any, in the instant action consists of removing and leaning a third of one side against the other side of a stake truck with its lower edge upon the floor of the truck about 15 to 18 inches from the other side. According to all the witnesses, that was usually done to facilitate the loading of the truck. Plaintiff testified that he knew of such custom and had seen it done many times.

It is not disputed that the portion of the side so leaning did fall onto the floor of the truck. There is no testimony as to what caused it to fall or that any one other than plaintiff saw it fall. At and before the time of the falling of the side, the truck driver was walking on the bed of the truck, carrying and stacking crates of cabbages, and another employee of defendants had been lifting such crates from a hand truck to the floor of the truck but had returned to the stall to

reload the hand truck. Plaintiff testified that he had also been putting crates onto the floor of the truck.

■ On the instant appeal, as said by the Supreme Court in *Crogan* v. *Metz,* 47 Cal.2d 398, 404 [303 P.2d 1029], "The test, of course, is not whether there is a substantial conflict in the evidence but whether there is substantial evidence in favor of the respondent." ■ An appellate court must accept as true all evidence which tends to establish the correctness of the findings and decision of the trial court, as well as the inferences which might reasonably have been drawn by the trial court from such evidence.

■ While cases cited in the briefs of appellant and many others hold that, where the evidence is entirely without conflict and no conflicting inferences can be drawn therefrom, the questions of negligence and contributory negligence are questions of law requiring that the court grant a motion for nonsuit, direct a verdict, render judgment notwithstanding the verdict, grant a motion for new trial, or reverse a judgment on appeal, we cannot say that in the instant action the evidence does not support the verdict of the jury.

In the case at bar, defendants' truck was not being loaded upon a public street where plaintiff had a right to expect that others would guard his safety. The situs of the claimed injury in the instant action was a private way inside of Terminal Market, of which defendants and their employees were tenants. Plaintiff was neither a farmer delivering or a retailer buying produce, and therefore he was not an invitee while in the market lane. If plaintiff was a trespasser, as could be inferred from some of the testimony, then there is no evidence in the record of such a lack of care on the part of the defendants as could make them responsible for plaintiff's injury.

From all the evidence in the instant action, we cannot say that, as a matter of law, the leaning of the portion of one side of the stake truck against the other was negligence upon the part of the driver of defendants' truck.

From the entire record in the instant action, the jury was not required to find that plaintiff's head was struck by the portion of the defendants' truck, or even that it could have been so struck. Defendants' driver testified that in a matter of seconds after he heard the gate fall he looked around and it was protruding over the bed of the truck only about two inches. There is no evidence that it had at any time gone more than two inches beyond the bed of the truck, or that

plaintiff's head had ever been within two inches of the truck bed.

Unless it can be said as a matter of law that only one reasonable conclusion is legally deducible from the evidence, the trial court is not justified in taking the case away from the jury. (*Gish* v. *Los Angeles Ry. Corp.*, 13 Cal.2d 570, 572-573 [90 P.2d 792]; *Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224, 228 [263 P. 799].)

Appellant claims that "the court erred in refusing plaintiff's requested instruction that defendants set up the gate and where one sets the stage by creating a dangerous condition he is responsible for all the natural consequences." That requested instruction is not in the record on appeal. However, from an examination of the instructions given, we are satisfied that the jury was correctly and adequately instructed and that it was not misled or confused.

A number of the rulings on the admission of evidence are cited by appellant as reversible errors. They have been examined and we are convinced that the trial was fair and that none of the rulings complained of constituted prejudicial error in the instant action. No useful purpose would be served by a detailed discussion of those rulings.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied May 28, 1958, and appellant's petition for a hearing by the Supreme Court was denied June 25, 1958. Carter, J., was of the opinion that the petition should be granted.