[Civ. No. 10659.   Third Dist.   Feb. 19, 1964.]

DARRYL WAGNER, Plaintiff and Respondent, v. MATT G. OSBORN, as Administrator, etc., Defendant and Appellant.

R. W. Levy and Harold A. Parichan for Defendant and Appellant.

Panattoni, Farrell & Gibbert and Victor A. Bertolani for Plaintiff and Respondent.

SPARKS, J. pro tem.*—Plaintiff-respondent Darryl Wagner was riding as a guest in an automobile driven by Donald Graham Osborn. In attempting to negotiate a curve on the river road between Sacramento and Woodland the car left the highway and collided with a tree. Donald Graham Osborn was killed in the tragic accident and plaintiff was injured. Action was brought in the Superior Court of Yolo County against defendant-appellant, Matt G. Osborn, as administrator of Donald's estate. A trial was had and the jury returned a verdict for plaintiff in the sum of $6,000. Judgment was entered against said defendant for said amount plus costs.

On appeal it is urged that the trial court erred in the admission, over defendant's objection, of opinion evidence as to the intoxication of deceased based on a blood sample; that the evidence was insufficient to sustain the verdict either on the issue of intoxication or wilful misconduct; and that the court erred in denying defendant's motion for a directed verdict and in refusing to give instructions on contributory negligence and assumption of risk. Our views upon each of these assignments of error follow.

### Admissibility of Evidence as to Intoxication.

Attack is made upon the identification of a specimen of blood analyzed to determine its alcoholic content by Mr. Allen Gilmore, a criminologist with the California Bureau of Criminal Investigation and Identification. It is asserted that the evidence was insufficient to show that the specimen came from deceased for the reason that the deputy coroner who took the sample was not acquainted with Donald Graham Osborn in his lifetime, and that there was nothing in his testimony to establish the manner in which he identified the body. It was further urged that there was a break in the chain of possession of the sample in its transportation to the analyst.

This assignment of error cannot be upheld. A review of the evidence convinces us that it amply was sufficient, on the foundation, to support the trial court's ruling that it be admitted to the jury. It showed conclusively that Donald Graham Osborn was the only person killed in the accident. Deputy Coroner Harrington removed the body from the scene

*Assigned by Chairman of Judicial Council.

of the accident and took the specimen from the body so removed. A sealed and labeled vial containing the sample was then placed in an envelope by the same deputy coroner and the envelope also was sealed by him. The highway patrol officer who transported the specimen to the Bureau of Criminal Investigation and Identification in Sacramento was called as a witness and identified the envelope. Gilmore, who performed the analysis, testified that he took the sealed envelope from the refrigerator; that the flaps on the envelope were glued down and sealed with a cellophane type tape; that he cut open the flap across the top, removed the vial of blood, and then performed the test required. Upon being asked if he made any check of the envelope to see whether there had been any tampering with it, or whether it had been opened previously, he replied, ''Yes,'' and that there were no indications of any unusual conditions of the envelope; that the vial inside was sealed. At the trial the same envelope was identified by the deputy coroner as the one in which he had placed the sample and he had initialed. It bore the initials also of the highway patrol officer who had transported it. Under such circumstances it was not requisite that the deputy coroner have personal knowledge of the identity of the deceased. (*Nichols* v. *McCoy*, 38 Cal.2d 447, 449 [340 P.2d 569].)

■ It is true that the party offering demonstrative evidence must show to the satisfaction of the trial court that in reasonable certainty there had been no alteration of or tampering with the exhibit. (*People* v. *Riser*, 47 Cal.2d 566 [305 P.2d 1].) This burden, however, is not so absolute that all possibility of alteration must be negated. Even where there may be the barest speculation that tampering could have occurred, it is proper to admit the evidence and let what doubt there may be go to its weight. (*People* v. *Riser, supra*; see also *People* v. *Lugo*, 203 Cal.App.2d 772 [21 Cal.Rptr. 871]; *People* v. *Barquera*, 208 Cal.App.2d 104 [25 Cal.Rptr. 45].)

■ Although in the case at bench all persons who handled the envelope containing the specimen were not called as witnesses, the chain of possession was nevertheless substantially established, and the proof adequate to sustain the foundation for admissibility. The weight to be given this evidence was for the jury to determine. Cases relied upon by appellant,[1] in which there was an insufficient showing that

---

[1]The cases cited by appellant, to wit: *People* v. *Smith*, 55 Cal.App. 324 [203 P. 816]; *American Mutual etc. Co.* v. *Industrial Acc. Com.*, 78

the blood sample had come from the body of the deceased in question, are distinguishable from the instant factual situaion.

We remark also that at the trial the only objection made by defendant concerning the introduction into evidence of the envelope was a motion to strike the testimony on the ground it had been obtained illegally. After the court denied this motion plaintiff offered the exhibit in evidence, at which time defendant's counsel stated: ''I have no objection to it being received in evidence.'' No other objections were made until after the analyst Gilmore had testified as to the alcoholic content of the blood and was then asked what effect such an amount of alcohol in the blood would have on an individual insofar as his ability to drive a motor vehicle was concerned. Counsel for defendant at that time interposed the following objection: ''No proper foundation has been laid for the expert opinion on that subject.'' The court then offered to permit counsel to examine the witness on his *voir dire*.

The only other objection made relative to the alcoholic content of the blood sample came as follows: ''Q. Without having seen the individual Donald Graham Osborn, but having in mind the alcohol content of his blood, do you have an opinion as to whether or not that individual would have been under the influence of alcohol insofar as his ability to drive? LEVY: Object, your honor, on the ground that no proper foundation has been laid for the expression of an opinion on that point.''

To raise on appeal the point of erroneously admitted evidence there must be a showing that a timely objection had been made at the trial directing the attention of the court to the particular evidence sought to be excluded. To fail to make such objection, or to make it defectively by specifying the wrong ground, constitutes a waiver. (*Nichols* v. *McCoy*,

Cal.App.2d 493 [178 P.2d 40]; *McGowan* v. *City of Los Angeles*, 100 Cal.App.2d 386 [223 P.2d 862, 21 A.L.R.2d 1206]; *Dobson* v. *Industrial Acc. Com.*, 114 Cal.App.2d 782 [251 P.2d 349]; *Nesje* v. *Metropolitan Coach Lines*, 140 Cal.App.2d 807 [295 P.2d 979]; *Madden* v. *Madden*, 160 Cal.App.2d 422 [325 P.2d 538], are readily distinguishable from the facts in the instant situation. Here, it was admitted by the pleadings that Donald Graham Osborn was the driver of the car. He was the only person killed in the accident. The deputy coroner went to the scene of the wreck and removed the only body there. The same deputy coroner drew the blood specimen from the same body so removed. The fact that he had not known Osborn in his lifetime was not material to the identification of the specimen.

*supra,* 38 Cal.2d 447; *People* v. *Corrigan,* 48 Cal.2d 551 [310 P.2d 953]; *Sublett* v. *Henry's etc. Lunch,* 21 Cal.2d 273, 275 [131 P.2d 369]; *People* v. *Prado,* 190 Cal.App.2d 374 [12 Cal.Rptr. 141]; *Rupp* v. *Summerfield,* 161 Cal.App.2d 657, 662 [326 P.2d 912]; *People* v. *Horn,* 187 Cal.App.2d 68 [9 Cal.Rptr. 578]; *Bank of America* v. *Taliaferro,* 144 Cal.App. 2d 578, 582 [301 P.2d 393]; *Griffin* v. *Jacobsen,* 17 Cal.App. 2d 68 [61 P.2d 350]; *People* v. *Alves,* 123 Cal.App.2d 735 [267 P.2d 858].)  ▮ Objections on the foundation of the expert's opinion interposed after evidence of the blood sample was already in the record not only came too late, but failed to specify the particular defect now urged. The objections insofar as admissibility of the evidence is concerned must be held to have been waived.

### Motion for a Directed Verdict.

This motion by defendant was predicated upon the theory that evidence of the alcoholic content of the blood should have been excluded; and that without such there would have been insufficient evidence to support a verdict on intoxication, and without evidence of intoxication the isolated act of driving at an excessive speed would not constitute wilful misconduct. This argument is now rendered moot, since we have decided that the evidence of intoxication was properly admitted.  ▮ It is established that a directed verdict may' be granted only when, after giving to plaintiff's evidence the fullest value to which it is entitled and after disregarding all conflicting evidence, the result is a determination there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. (*Ramey* v. *Socony Mobile Oil Co.,* 211 Cal.App.2d 441, 444 [27 Cal.Rptr. 191]; *Boyson* v. *Porter,* 10 Cal.App.2d 431 [52 P.2d 582]; *Marquez* v. *Ortiz,* 159 Cal. App.2d 721 [324 P.2d 720].) This result was not obtained in the instant case, and the denial of the motion for a directed verdict was without error.

### Sufficiency of the Evidence to Support the Verdict on the Issue of Intoxication or of Wilful Misconduct.

▮ The qualifications in education, experience and proficiency of Allen Gilmore as a chemist and analyst of blood specimens were well established. The Kozelka-Hine method used by him in the examination of the blood sample and the accuracy of the results thus obtained were not challenged. The following opinion evidence which he gave on the effect of alcohol upon the human body in relation to the ability to operate a motor vehicle stands in the record uncontroverted;

"A. 0.18. Everyone with that much alcohol in their system would be under the influence of alcohol sufficiently to impair their driving ability. Q. Would there be any exceptions to that? A. No. Q. What effect would that alcohol content in the blood have on the individual insofar as driving a motor vehicle? A. The principal effect would be on his judgment. His judgment would be impaired. Also his coordination would be impaired. He would not have the same speed of reaction he normally would have. His visualness would be impaired. He couldn't focus on a far object and this would put him into a predicament he couldn't handle. As a result of this and the impairment of his nervous system, he would be under the influence sufficiently to make him an unsafe driver."

In addition to this opinion evidence as to the driver's intoxication, witnesses were called who had viewed the accident. According to their testimony the Osborn car was being driven through the night at a high rate of speed of from 70 to 90 miles per hour, traveling on a two-lane road which had a posted speed limit of 45 miles per hour; that at the beginning of a sweeping curve Osborn had overtaken and passed a truck and then proceeded to pass another car, both traveling in the same direction; no attempt had been made to return to his proper lane by pulling in between the two vehicles, despite the fact that there was a third car approaching from the opposite direction which should have been visible to him; in overtaking and passing the second car the path of his car was described as "going very wide," in fact so far over on his left-hand side of the road that the car struck the reflector lights. The jury could have concluded that this may have caused him to lose control of the car, or because no other car was immediately involved that excessive speed on a curve alone could have been the factor which caused him to lose control, strike the reflectors, and then plunge over the bank to destruction.

Wilful misconduct, such as will render a driver liable to his guest, may manifest itself in either of the following ways: "[F]irst, 'the intentional doing of something with a knowledge that serious injury is a *probable* (as distinguished from a possible) result'; and second, 'the intentional doing of an act with a wanton and reckless disregard of its *possible* result.' ..." (*Jones* v. *Harris*, 104 Cal.App.2d 347, 351 [231 P.2d 561]; *McDevitt* v. *Welch*, 202 Cal.App.2d 816 [21 Cal. Rptr. 251].) Evidence of excessive speed under circumstances which warrant a wilful, wanton or reckless disre-

gard for the safety of guests may constitute wilful misconduct. (*Johnson* v. *Marquis*, 93 Cal.App.2d 341 [209 P.2d 63] ; *Enos* v. *Montoya*, 158 Cal.App.2d 394 [322 P.2d 472] ; *Hallman* v. *Richards*, 123 Cal.App.2d 274 [266 P.2d 812] ; *Davis* v. *Oldendorph*, 130 Cal.App.2d 314 [278 P.2d 956].) █ Generally, evidence of excessive speed standing alone is not sufficient but must be joined with other circumstances in order to constitute wilful misconduct under the guest law. But even this generality may yield if the speed becomes so palpably excessive as to make it probable that death or injury will ensue to the guest. Then such extreme speed standing alone might justify a finding of wilful misconduct. (*Wright* v. *Sellers*, 25 Cal.App.2d 603 [78 P.2d 209] ; *Munson* v. *Friedman*, 154 Cal.App.2d 73 [315 P.2d 727] ; *Anderson* v. *Newkirch*, 101 Cal.App.2d 171 [225 P.2d 247] ; *Carmean* v. *Bridges*, 142 Cal.App.2d 99 [297 P.2d 671].)

█ From the appellate viewpoint of considering the evidence, when challenged, in the light most favorable to respondent (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183] ; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689] ; *Estate of Teel*, 25 Cal.2d 520 [154 P.2d 384]), it is clear that in the case now before us it was amply sufficient to support the verdict and judgment upon either ground of intoxication or of wilful misconduct.

### *Refusal to Instruct Upon Contributory Negligence and Upon Assumption of Risk.*

█ Conduct on the part of a guest in a motor vehicle may be such as to bar a recovery from a host driver, notwithstanding the latter's intoxication or wilful misconduct in operating the motor vehicle. A person who accepts a ride in the automobile of another under circumstances which would induce a reasonable person to believe that the driver was intoxicated may be precluded from a right of recovery. (*House* v. *Schmelzer*, 3 Cal.App.2d 601 [40 P.2d 577] ; *Knickrihm* v. *Hazel*, 3 Cal.App.2d 721 [40 P.2d 305] ; *Smith* v. *Maloney*, 26 Cal.App.2d 97 [78 P.2d 1034].) This rule, however, has no application unless the guest has actual or constructive knowledge of the intoxication of the driver. (*Earley* v. *Wolf*, 10 Cal.App.2d 224 [51 P.2d 203] ; *Provin* v. *Continental Oil Co.*, 49 Cal.App.2d 417 [121 P.2d 740].)

█ Actual knowledge is shown, of course, when the guest either participates with the driver in the consumption of spirits or witnesses him imbibe a sufficient quantity thereof to cause intoxication. Absent such actual knowledge, a guest

rider could still be held to have constructive knowledge of intoxication if the driver's conduct was such as to lead a reasonably observant person to that belief. (*Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal.2d 480 [55 P.2d 870]; *Enos* v. *Montoya, supra,* 158 Cal.App.2d 394; *Cowan* v. *Bunce,* 212 Cal.App.2d 48 [27 Cal.Rptr. 758].) The possession of such knowledge, either actually or constructively, may bring the guest into the category of a possible contributor to the negligence of the driver. (*Schneider* v. *Brecht,* 6 Cal.App.2d 379 [44 P.2d 662]; see also *Mountain* v. *Wheatley,* 106 Cal.App.2d 333 [234 P.2d 1031]; *Amidon* v. *Hebert,* 93 Cal.App.2d 225 [208 P.2d 733].)

In the case now being reviewed there was not a scintilla of evidence to show that plaintiff had actual knowledge of Osborn's intoxication. For, at the outset of the trial, defendant elected to invoke the privilege of subdivision 3 of section 1880 of the Code of Civil Procedure.[2] By reason of defendant's objection thus interposed and sustained by the court, plaintiff was not permitted to testify as to the facts of the accident, or as to any events prior thereto. Since he was limited in his testimony only to his injuries, such questions as how long before the accident plaintiff had entered deceased's car, whether he and the deceased had been together prior to the ride, what they had done either jointly or severally, and where, remain unanswered.

Assuming then, as we must, that plaintiff had no actual knowledge that the deceased had been drinking, were there nevertheless facts in the record from which the jury could have reasonably concluded that he should have been aware of the intoxication?

When asked what percentage of alcoholic content in the blood would render a person obviously intoxicated, the expert witness, Mr. Gilmore, replied: "That would vary with individuals. The only way you could tell on each individual would be to see him on different levels. Without seeing a

---

[2]Subdivision 3 of section 1880 of the Code of Civil Procedure (commonly known as the "dead man's statute") reads:

"The following persons cannot be witnesses:

".   .  .  .  .  .  .  .  .  .

"3. [Actions against estates.] Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person."

person, I wouldn't say a person is obviously intoxicated below .30%."

The question of whether or not Osborn, with an alcoholic content of 0.18% in his blood, would have appeared obviously intoxicated to the plaintiff thus was left in the nebulous realm of conjecture. The expert was unable to hazard an opinion on it, and the plaintiff was not permitted to testify. With no proof of actual knowledge on the part of plaintiff of the driver's intoxication and only a conjecture[3] as to constructive knowledge, the trial court was justified in refusing the instruction.

Much that has been said above concerning the court's refusal to instruct on contributory negligence applies also to the instruction on assumption of risk. Both of the doctrines describe conduct which bars recovery in negligence actions. Although, of course, not identical,[4] they nevertheless may overlap in some respects. ■ To assume a risk one must have actual knowledge of the danger involved and freedom of choice to decline exposure to the risk. (*Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375 [240 P.2d 580] ; *Gomes* v. *Byrne*, 51 Cal.2d 418 [333 P.2d 754] ; *Guerrero* v. *Westgate Lumber Co.*, 164 Cal.App.2d 612 [331 P.2d 107] ; *Hidden* v. *Malinoff*, 174 Cal.App.2d 845 [345 P.2d 499].) ■ It may defeat recovery, although it plays no part in causing the accident. (*Mula* v. *Meyer*, 132 Cal.App.2d 279 [282 P.2d 107] ; *Gold* v. *Hlivyak*, 131 Cal.App.2d 39 [280 P.2d 71].)

The doctrine of assumption of risk applies to the automobile guest law in a number of different situations. ■ A guest who accepts a ride with a driver whom he knows to be intoxicated assumes the hazards of his undertaking. ■ Likewise, a guest who learns after he has entered the vehicle that the driver is intoxicated must avail himself of any reasonable opportunity to alight from the vehicle in some reasonably safe place. (*Jones* v. *Harris, supra,* 104 Cal.App. 2d 347.) ■ If the guest at the time of a perilous ride has knowledge of the hazards involved and knowingly concurs in the wilfulness of the driver's conduct, he thus knowingly accepts the risk of such driving and is barred from

---

[3]There was no evidence as to the length of time plaintiff had been in the car and had an opportunity to observe Osborn. For all the record shows, he might have accepted a ride only a few minutes prior to the accident.

[4]For discussion of the distinction between contributory negligence and assumption of risk see *Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158 [265 P.2d 904] ; *Gold* v. *Hlivyak, supra.*

recovery. (*Mountain* v. *Wheatley*, *supra*, 106 Cal.App.2d 333, 338; *Van Fleet* v. *Heyler*, 51 Cal.App.2d 719, 733 [125 P.2d 586].) Although silence on the part of the guest does not necessarily constitute concurrence, evidence of a protest against the driver's wilful misconduct is highly significant. A similar construction could follow the failure by the guest to leave the vehicle if given a reasonable opportunity to do so.

There can be no inference that a guest has assumed the risk of a ride merely by showing the driver's wilful misconduct in the operation of the car. When there is no evidence on the subject, it could as consistently be presumed that the guest had protested vigorously against the reckless driving and demanded to be let out of the car as that he, with knowledge of the danger, acquiesced in the driver's conduct. Judgments cannot be based on guesses or conjectures. To support a finding of fact an inference must be drawn from evidence rather than from speculation as to probabilities without evidence. (*Dobson* v. *Industrial Acc. Com.*, 114 Cal.App.2d 782 [251 P.2d 349]; *Reese* v. *Smith*, 9 Cal.2d 324 [70 P.2d 933].)

In the instant case the defendant was aware that the burden of proving the affirmative defenses of contributory negligence and of assumption of risk rested upon him. He, in effect, elected by invoking the provisions of said subdivision 3 of section 1880 to limit the evidentiary scope to a period of minutes, or perhaps even of seconds, before the fatal crash. The court and jury were given a picture through the lips of witnesses of the headlights of a car appearing out of the darkness, advancing at high speed along the pavement, and then disappearing over an embankment. The curtain was drawn effectively as to all prior events concerning the automobile, or as to its occupants.

We conclude that from this brief interval of observation at night it would be impossible to find that the guest in the car had assumed the risk of the ride; and that there was no evidence, not based upon speculation, upon which to submit the issue to the jury.

Although each party is entitled to have his theory of the case as presented by his pleadings and supported by the evidence submitted to the jury by appropriate instructions (*Rabago* v. *Meraz*, 60 Cal.2d 55 [31 Cal.Rptr. 777, 383 P.2d 129]; *Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630 [255 P.2d 795]; *Wilson* v. *City & County of San Francisco*, 174

50

Cal.App.2d 273 [344 P.2d 828]; *Demangos* v. *Cannon,* 187 Cal.App.2d 624 [10 Cal.Rptr. 24]), nevertheless, it is not only not proper, but is error, to instruct on any theory that is untenable as a matter of law, or is unsupported by the evidence. (*Nelson* v. *Angel,* 124 Cal.App.2d 861 [269 P.2d 626]; *Strandt* v. *Cannon,* 29 Cal.App.2d 509 [85 P.2d 160]; *Kroplin* v. *Huston,* 79 Cal.App.2d 332 [179 P.2d 575].)

█ Since there was no evidence from which the jury reasonably could have found or inferred contributory negligence or assumption of risk by the plaintiff, the instructions on those subjects were properly denied by the trial court.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.