[Civ. No. 13311.    First Dist., Div. Two.    Mar. 11, 1947.]

AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, AURORE G. WILSON et al., Respondents.

Burbank, Laumeister & McFarland for Petitioner.

R. C. McKellips, John A. Rowe, Jr., and Edward A. Sarkisian for Respondents.

JONES, J. pro tem.—The petitioner in this proceeding seeks the annulment of an award made by the Industrial Accident Commission on account of the death of Frank Wilson. The decedent was employed by the Dromedary Company, Inc., a food manufacturing and distributing concern, as a salesman calling on jobbers only. The cities of Stockton, Sacramento, Santa Rosa and Petaluma were in the territory assigned to him. He lived in Los Altos. At about 2 p. m. of August 13, 1945, he left his home for Stockton to call upon the trade in that and the other cities mentioned. The automobile in which he was travelling, a Chevrolet coupe, belonged

to his employer. At a point in San Joaquin County on the highway south and west of Stockton he met with an accident, was injured, and from this injury he died four days later without regaining consciousness. The commission made an award to his widow of $4,740 as a death benefit, and to his mother-in-law who was partly dependent upon him, in the amount of $1,260.

As a defense to the claim of the dependents, the petitioner set up the intoxication of Wilson as the cause of his injury (Lab. Code, § 3600). This is an affirmative defense, and the burden of proving it rests on the employer. (Lab. Code, § 5705; *Pacific Freight Lines* v. *Industrial Acc. Com.*, 26 Cal.2d 234 [157 P.2d 634].) The issue here goes to the sufficiency of the evidence to sustain this defense.

No witness was produced who saw Wilson from the time he left his house in Los Altos until he was received in the San Joaquin General Hospital in Stockton after the accident. A traffic officer testified that he received a call at about 10:15 p. m. on August 13th to proceed to a point on the highway south of Stockton. According to his testimony, he there found the automobile in which Wilson had been riding faced southerly with the top and right side of the car badly damaged. On the opposite side of the road a truck with a trailer attached was parked but headed northerly. The left rear and side of the trailer showed some evidence of a recent impact. This witness testified that the left rear wheel of the trailer was not over eight inches off the paved portion of the highway. Nothing appears as to the overhang, if any, of the bed or body of the truck or trailer above the pavement. In Wilson's car the officer found two empty pint beer bottles, and one full one.

On the day following the accident one Leon Happel, who at the time was employed to make chemical analyses for the peace officers of San Joaquin County, received a bottle containing some fluid purporting to be blood. He stated that he received the bottle and contents from the Highway Patrol. The bottle bore a label, "Tuesday, 8/14/45, Frank Wilson, San Joaquin County Hospital." The contents of the bottle were subjected by Happel to a chemical test, which showed the fluid to contain 3.2 milligrams of alcohol per cubic centimeter. Dr. Jesse L. Carr, a pathologist, testified that 3.2 milligrams of alcohol per cubic centimeter in the blood of an individual would indicate inebriation, and a staggering and toxic condition. Happel

did not know Wilson, and as far as he knew he had never seen him. Neither did he know that he had met with an accident.

The wife and adult daughter of Wilson visited him at the hospital at about 7:30 on the morning of August 14th, and each testified that she could ascertain no signs of liquor about him at that time. A certificate by Dr. W. S. Bridwell, Chief Resident Physician of San Joaquin General Hospital, was received in evidence, the body of which certificate reads as follows:

"Re: Frank W. Wilson.

"This is to certify that at the time of admittance examination of the above named patient, the clinical symptoms did not indicate to me that the patient was intoxicated."

Upon these facts, the commission made a finding upon the issue of intoxication, as follows: "The evidence adduced herein by the defendant is insufficient to sustain their contention that the injury to said Frank Wilson and his death proximately resulting therefrom was proximately or at all caused by his intoxication." This finding, in effect, is that the injury to Wilson was not caused by his intoxication.

The petitioner contends that the finding is contrary to the evidence, and argues that the facts show without contradiction that Wilson was intoxicated at the time he was injured. The contrary appears to be the true situation.

Outside of the two empty beer bottles found in Wilson's car, the petitioner's case rests entirely upon the analysis of the blood sample made by the chemist, Happel, and the opinion of Dr. Carr based on this analysis. It may be assumed that the fluid analyzed by Happel was blood, although there is no evidence to show from what manner of body it came, nor when. But, assuming that it was, there is a complete lack of identification of it as the blood of Wilson. The only indication that it might be Wilson's blood is a label with his name on it put on the bottle by somebody, but no one knows who. Even assuming it to be Wilson's blood, there is no showing that it was in the same condition when Happel received it as it was when the sample was taken, nor that Wilson had not taken, or been administered as a measure of first aid, a strong alcoholic stimulant after the accident. The whole matter is one of assumption and pure speculation.

It is rudimentary that a specimen taken from a human body for the purpose of analysis must be identified before such

specimen or any analysis made from it attains standing as evidence of the condition of the person whose conduct is questioned. Without identification, there is no connection between the two. Reason dictates that the testimony of a witness that a blood sample contains alcohol without some evidence to show that the blood is that of the person charged amounts to no proof at all. The situation here presented in respect to identification is analogous to that presented in the case of *People* v. *Smith,* 55 Cal.App. 324 [203 P. 816]. In that case the stomach was removed from the body of a woman who purportedly had been poisoned. The autopsy surgeon did not know the woman, and no one identified the body from which the stomach was taken as her body. A chemist made an analysis of the contents of the stomach, and testified that he found that the contents contained cyanide. The defendant was convicted of murder, and upon appeal the case was reversed, the court saying: ''It was upon the contents of this stomach that the entire case for the prosecution rested. It was the sole basis for Dr. Wagner's opinion that the person from whose body it was taken died of cyanide poisoning. It was the sole basis for the evidence given by Professor Maas and the other experts who testified as to the character of the stomach contents. . . . If there was no legal evidence to identify it as the stomach of defendant's deceased wife, then, manifestly, to permit the prosecution . . . to introduce evidence of its contents was not only error but highly prejudicial error.'' The failure to identify the sample as the blood of Wilson renders the testimony of Happel and Dr. Carr of no evidentiary value at all.

The pint beer bottles considered alone have little significance. They were not taken from the possession of Wilson. They were found in his car after he had been removed, but no one knows how long after. The fact that there was some broken bottle glass on the pavement in the vicinity of the parked truck would be more to the point that there was drinking going on in the vicinity before Wilson arrived. No suggestion, let alone proof, is offered as to how any bottles got from the inside of his car to the pavement.

The certificate of Dr. Bridwell that the examination of Wilson upon his admission to the hospital did not indicate that he was intoxicated, and the testimony of his wife and daughter that they could ascertain no signs of liquor about

him at the time of their visit emphasize the futility of the blood test and the beer bottles as items of proof. There appears no sound basis for challenging the finding of the commission.

As the decedent was operating his employer's car in the furtherance of his employer's business at the time of his injury no serious contention can be, and none is, made that he was not injured in the course of his employment.

The award is affirmed.

Nourse, P. J., and Goodell, J., concurred.