[Civ. No. 8311. Third Dist. Dec. 17, 1952.]

CECIL W. DOBSON, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, EDGAR H. HOLTON et al., Respondents.

McKenzie & Arata for Petitioner.

Leonard, Hanna & Brophy and Edmund J. Thomas, Jr., for Respondents.

VAN DYKE, J.—This is a proceeding to review a decision of the respondent Industrial Accident Commission denying an application for adjustment of claim. Petitioner Dobson, while in the employ of Edgar H. Holton, was injured in a collision between an automobile he was driving and another vehicle. His application was denied by the respondent commission upon the ground that the injury was caused solely and proximately by the intoxication of petitioner. Whether or not this finding has substantial support in the record is the sole question presented.

Applicant testified that some time before the accident he had taken a glass of port wine, but had consumed no other alcoholic liquor. He had drunk the wine to relieve gas pains from which he was suffering. He drove 30 to 40 miles to the point of the accident, continuously suffering pain. His last clear recollection before the collision was feeling severe pain near his left lower ribs after which he had no memory of seeing or doing anything. He believed he had become unconscious. A deputy sheriff out of Tulare County, returning thereto, observed Dobson's driving for a distance of about a mile, and for a time approaching a minute, before the accident. He saw Dobson's car go off onto the right shoulder, back until the left wheels were over the center line of the highway, which maneuver occurred two or three times, then he saw the car cross the line and get entirely into the opposite lane where a head-on collision occurred with an approaching vehicle. A collision with a truck had been narrowly avoided during this interval. The officer said he believed Dobson was drunk driving, but also said that although he talked with him after the collision, while Dobson was pinned in his car and was close to him, he did not smell liquor on Dobson's breath. He added that he did not attempt to do so. Save for the testimony of a toxicologist, which we will discuss later, the foregoing is the whole of the proof upon the issue of intoxication.

To support its affirmative defense of intoxication Holton's insurance carrier presented Doctor Charles H. Hine as its witness. He was a specialist in toxicology. He stated that he had analyzed a blood specimen which he had received through registered mail. It was contained in a bottle on which was a label whereon was typed the statement that the specimen had been taken some 10 days before the analysis at Santa Rosa General Hospital by Doctor C. M. Fleissner, witnessed by Patrolman Cunningham. The sample was in a bottle like those the witness said he provided to district attorneys and hospitals for blood sampling purposes. Objection was made that no proper foundation had been laid for the reception of testimony concerning the alcoholic content of the blood sample in that there was no evidence that it was Dobson's blood. Thereupon opposing counsel stated that he would ask a further hearing so he could produce as witnesses those who had taken the sample and in the meantime wanted the doctor's testimony accepted subject to such further proof. However, the record does not disclose that any further proof of the identity of the blood sample was made. The doctor testified that bottles for blood sampling purposes were given by him to district attorneys with a small envelope in which the bottle could be placed and sealed. A space for writing information was provided on the envelope. Along with this material were sent instructions for the information of anyone drawing the specimen so that it would be satisfactorily drawn from a medical and legal standpoint. These instructions were distributed, with the bottles and the shipping containers, to hospitals, and were carried by highway patrolmen in their cars. The doctor said that he did not have the bottle, contents of which he had analyzed on the assumption that it was Dobson's blood but that it was under lock and key in the coroner's office in San Francisco and was available. It was never produced. The witness had never seen Dobson. No witness testified that a sample of Dobson's blood had been taken and of course there was no testimony as to the way it had been taken nor as to whether or not the instructions for taking such samples had been followed. Stripped to its essentials, the testimony of Doctor Hine was that he received by registered mail a bottle bearing a label on which was typed a statement that the bottle contained the blood of Dobson, which had been drawn by Doctor Fleissner with Cunningham standing by as a witness. Doctor Hine analyzed the blood in the bottle and found therein an alcoholic content of 0.207 per cent which the doctor said would

in 80 per cent of all people indicate gross drunkenness. From this premise and from the testimony of the erratic driving pattern of Dobson just before the collision the witness said he believed the accident was caused by Dobson's intoxication.

We need not concern ourselves we think with the admissibility of the testimony as to the alcoholic content of the blood sample analyzed by Doctor Hine. ██ Evidence draws no weight merely because it is received. ██ We think the doctor's testimony constituted no proof whatever that Dobson was intoxicated. This is so because there was no proof that the blood sample the doctor analyzed was Dobson's blood. That at some time, someone's blood, sampled somehow, contained alcohol, afforded no proof that Dobson was intoxicated.

"It is rudimentary that a specimen taken from a human body for the purpose of analysis must be identified before such specimen or any analysis made from it attains standing as evidence of the condition of the person whose conduct is questioned. Without identification, there is no connection between the two. Reason dictates that the testimony of a witness that a blood sample contains alcohol without some evidence to show that the blood is that of the person charged amounts to no proof at all." (*American Mut. etc. Co.* v. *Industrial Acc. Com.*, 78 Cal.App.2d 493, 496-497 [178 P.2d 40].)

Reference has been made to *Nichols* v. *McCoy*, 38 Cal.2d 447 [240 P.2d 569], but we think the decision inapplicable here. In that case it was held that under sections 1953e to 1953h of the Code of Civil Procedure the contents of a record of a coroner's office could be testified to, or if that method of proving it were objected to, then the record could be introduced in evidence, where a proper foundation had been laid, that is to say, where a custodian or other qualified witness had testified as to its identity as a record and the mode of its preparation and that it was made in regular course at or near the time of the condition it was intended to prove. The Supreme Court held that the proper foundation had been laid. But the foregoing premises do not exist in this case. No one testified that the legend upon the label found upon the bottle received through the mail by Doctor Hine possessed any of the necessary qualifications of a record admissible in evidence.

The remaining question is as to whether the testimony of the deputy sheriff, the only other evidence in the record tending in anywise to show intoxication on the part of Dobson, is sufficient to support the commission's determination that he was intoxicated and that his intoxication was the proxi-

mate cause of his injuries. The witness' conclusion from what he observed as narrated by him that Dobson was drunk-driving may be dispensed with. ■ That drunk drivers drive erratically just as drunk men walk erratically is a matter of common knowledge. ■ No attempt was made to qualify the witness as capable of determining intoxication by observing a driving pattern except to have him testify that he had done patrol work on the highway for 10 years and during that time had observed many motorists operating motor vehicles and watched their behavior. Such observations, however, are common to millions of licensed drivers. The witness did not say that he had ever seen a drunken person driving. Under such circumstances to permit an unqualified witness to state his conclusions as to the very ultimate issue to be determined is to permit him to usurp the functions of the trier of fact. (*Moore* v. *Norwood,* 41 Cal. App.2d 359 [106 P.2d 939].) The support of the respondent commission's finding as to intoxication is thus reduced to the testimony of the deputy sheriff that for a short time and for a short distance before the accident Dobson's car was observed to go over onto the right shoulder of the road, back across the center stripe, again over to the shoulder and back across the center stripe, turning to avoid collision with an approaching truck and then later again crossing completely over the center stripe so as to collide head-on with an approaching car. This circumstantial evidence is consistent with a condition of intoxication, with a loss of sensory and muscular coordination due to sickness, with the same loss due to hypnotic drugs or to drowsiness. It is also consistent with ordinary neglect. Court records of numberless cases can be found where head-on collisions following erratic driving have occurred from ordinary neglect. ■ But to say that circumstantial evidence is consistent with a number of hypotheses, including that contended for by the party relying upon such evidence is not to say that it would support a finding of the truth of the hypothesis necessary to establish liability. We think that all that can be said in respect of this situation is that it furnished no more than a basis for speculation as to whether or not, by reason of the irregular driving pattern observed by the officer witness, Dobson might have been intoxicated. ■ We think the case comes within the rule declared in *Reese* v. *Smith,* 9 Cal.2d 324, 328 [70 P.2d 933], that if the existence of an essential fact upon which a party relies is left in doubt or uncertainty the party upon whom the

burden rests to establish that fact must suffer, and not his adversary; that a judgment should not be based on guesses or conjectures, and that a finding of fact must 'be an inference drawn from evidence rather than on a mere speculation as to probabilities without evidence. (See, also, *McKellar* v. *Pendergast,* 68 Cal.App.2d 485, 489 [156 P.2d 950].)

The order under review is annulled and the cause is remanded to respondent commission for further proceedings.

Peek, J., and Schottky, J. pro tem., concurred.