[Civ. No. 17799.   First Dist., Div. Two.   Dec. 4, 1958.]

JOHN A. MARSHALL, Respondent, v. GARDNER ELLIOT MARSHALL, as Special Administrator, etc., Appellant.

Oliphant, Hopper & Stribling and David D. Oliphant, Jr., for Appellant.

Joseph L. Alioto and Walter F. Calcagno for Respondent.

DRAPER, J.—In 1927 plaintiff son bought land in Berkeley from his mother, and built an apartment house upon it. By 1935, the mother held her son's note for more than $30,000, secured by second deed of trust. The son then executed grant deed conveying the property to his mother. At the same time he signed and acknowledged a declaration stating that the deed was given in consideration of cancellation of the indebtedness secured by the second deed of trust, which consideration was expressly stated to be adequate; that the transfer was absolute, was made "without fraud, oppression, menace or undue influence and without any advantage whatsoever"; and that he "was retaining no interest whatsoever" in the property. Simultaneously, mother and son executed an agreement by which she released the son from all claims on account of the note and deed of trust held by her and agreed to hold the son harmless upon the note secured by first deed of trust. Their agreement also provided that if she should sell the property "at a profit," she would share such profit equally with her son, but that this created no interest in the property in the son. By its terms the agreement was not to be enforceable against the mother's estate in the event of her death, and creation of any trust was specifically disclaimed. The agreement spells out in detail the means of determining the profit which is to be divided upon sale.

In 1940 the same parties executed an agreement by which each released the other of all claims. The son specifically "quitclaims" to his mother all interest in the property "and all demands that he might make on account of any contracts or dealings" between mother and son relating to it.

In 1953 Mrs. Marshall sold the apartment house. Her son did not learn of the sale until 1954, and promptly filed this action against his mother to impress a constructive trust upon real property in Santa Barbara which the mother had purchased with the proceeds of the Berkeley sale. It is the theory of plaintiff son that in 1935, and again in 1940, he was engaged

in speculative vacation resort ventures; that the 1935 deed and the 1940 release were executed as "protective measures" against his creditors, and that his mother in fact represented to him that she would hold the bare legal title to the Berkeley property as trustee for him. The mother died after memorandum decision by the trial judge. The special administrator of her estate was substituted as defendant, and judgment was entered decreeing that plaintiff son owned one-half of the Santa Barbara property, subject to a lien to defendant for half the excess of the cost of that property over the proceeds of sale of the Berkeley property. The documents executed in 1935 and 1940 were adjudged void, upon the ground that they were contrary to the true agreement of the parties. Defendant appeals.

Plaintiff son pleaded and tried the case on the theory that he was entitled to the entire property. The mother defended upon the ground that she was the sole owner. As the trial judge pointed out in his memorandum decision, the evidence in support of either of these contentions is "most unsatisfactory." But whatever might be the sufficiency of the evidence to support an award of the whole property to either party, it is clear that no evidence whatever supports the award of a half interest to each. The oral testimony runs only to the total interest. At oral argument, respondent's counsel could point only to the "profit-sharing" agreement of 1935 as a basis for division of the property. But upon its face that agreement negatives any trust in the property. At most it provides for an equal sharing of the "profits" of a sale, and the record contains neither showing nor finding of the items included in the formula upon which "profit" is to be computed under the agreement. Still further, this agreement is one of the 1935 "documents" which the judgment expressly decrees to be void. Support for the judgment cannot well be found in an agreement which the same judgment annuls.

In the confusion of claims and testimony here, an equal division of the property in dispute may appear to have the advantage of simplicity or practicality. But such a result can be sustained only if there is some evidence to support it. Mere speculation as to probabilities will not support a finding of fact (*Dodson* v. *Industrial Acc. Com.*, 114 Cal.App.2d 782 [251 P.2d 349]).

Judgment reversed.

Kaufman, P. J., and Martinelli, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.