Filed 11/6/24  P. v. Ventura CA6
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051506 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 22CV003845) |
| v. | |
| MICHAEL VENTURA, | |
| Defendant and Appellant. | |

Michael Ventura appeals the Monterey County Superior Court's denial of his petition for a certificate of rehabilitation and pardon (hereafter certificate of rehabilitation).  (Pen. Code,[1] § 4852.01 et seq.)  He contends the court erred by relying on improper and unsupported factors, conditioning a future petition on satisfaction of specific tasks, and imposing an additional 24-month rehabilitation period.  The Attorney General agrees that the additional rehabilitation period is invalid but maintains the court properly exercised its discretion in denying Ventura's petition.

For the reasons explained below, we decide there is no evidence supporting the trial court's finding that Ventura appears to lack fully normalized relations with women.

---

[1] All further unspecified statutory references are to the Penal Code.

Because that finding was significant to the court's denial of Ventura's petition, we reverse the court's order and remand for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. 1993–1997 Sexual Misconduct and Convictions

In June 1993, Ventura met a woman on a blind date. According to the woman, after drinking alcohol at a few bars, she and Ventura went to his home. There, on a bed, Ventura pinned the woman's hands over her head against her will. The woman screamed, and Ventura covered her mouth. The woman struggled to break free as Ventura "dry hump[ed] her." The woman eventually broke away from Ventura, left his home, and reported the incident to the police. During a pretext call, Ventura denied attacking the woman and said things got out of hand due to the amount of alcohol they had consumed. Later, the woman told a police investigator not to pursue the matter further. No charges were filed.

In July 1994, Ventura molested two female neighbors while intoxicated. Regarding the first incident, the woman told police that Ventura came to her apartment and asked to use her telephone. While inside the apartment, Ventura grabbed the woman, forced her down onto a futon, kissed her, and touched her breast. The woman screamed, and Ventura left. A second woman told police that a couple days after the first incident, Ventura came to her apartment asking for a cigarette. While inside the apartment, Ventura grabbed the woman, pushed her down, lay on top of her, restrained her, and said, " 'Do you know what I'm going to do to you?' " The woman screamed, and Ventura left.

As a result of these two incidents, Ventura was charged with two misdemeanor counts of sexual battery by restraint (§ 243.4, subd. (a)). In 1995, Ventura pleaded guilty to one count of sexual battery and one count of misdemeanor assault (§ 242). The court placed Ventura on probation.

In May 1997, Ventura met a woman while out with friends. According to the woman, they drank alcohol. Later, on a bed at the woman's home, Ventura pinned the

woman's hands down and engaged in sexual intercourse. The district attorney charged Ventura with forcible rape (§ 261, subd. (a)(2)). In October 1998, he pleaded guilty to misdemeanor sexual battery (§ 243.4). The court later allowed Ventura to withdraw his plea, and in February 1999, he pleaded guilty anew to misdemeanor battery (§ 242). The court placed Ventura on probation and ordered him to complete community service.

### B. 2002 Sexual Misconduct and Convictions

In August 2002, then 40-year-old Ventura met a woman through an online dating website. According to the woman, a few days after their first lunch date, Ventura invited her over to his house. While sitting on a couch watching television, Ventura grabbed the woman's waist and kissed her. He also grabbed her left breast and tried to kiss it. The woman pulled back and stood up. Ventura grabbed the woman's arm, pulled her back onto the couch, pushed her onto her back, and got on top of her. Ventura pressed his penis against the woman while trying to kiss her neck. She told him to get off her. The woman managed to sit up, and Ventura straddled her. Ventura pulled down his shorts, exposed his erect penis, and tried to force his penis into the woman's mouth, but she turned her head. Ventura ejaculated on her face and hair. Forensic testing revealed Ventura's DNA (from his semen/sperm) on the woman's blouse at the neckline.

In June 2003, the Orange County District Attorney charged Ventura by information with attempted forcible oral copulation (§§ 288a, subd. (c), 664) and misdemeanor sexual battery (§ 243.4, subd. (e)(1)).

In May 2004, Ventura pleaded guilty to the sexual battery charge and one count of felony false imprisonment (§ 236) (subsequently added to the information). Ventura admitted touching "an intimate part" of the woman against her will "with the specific intent to cause sexual arousal." He also admitted restraining the woman by force without her consent and "compelling her to stay." Pursuant to the negotiated plea agreement, the court dismissed the attempted forcible oral copulation charge. The court placed Ventura

3

on probation for five years and ordered him to serve 180 days in county jail. Ventura was required to register as a sex offender (see § 290).

In June 2016, Ventura successfully petitioned the Orange County Superior Court to vacate his guilty pleas and dismiss the case pursuant to section 1203.4.

### C. 2016 Petition for Certificate of Rehabilitation

In 2016, Ventura filed a petition in the Monterey County Superior Court (hereafter trial court) for a certificate of rehabilitation (§§ 4852.01, 4852.06).[2] The trial court directed the district attorney to conduct an investigation regarding Ventura's petition.

In June 2017, during an interview with the district attorney (hereafter 2017 interview), the district attorney asked Ventura if he had "ever expose[d]" his penis to the woman he assaulted in August 2002. Ventura answered, "No." Ventura, however, acknowledged knowing that his DNA had been found on the woman's blouse. When the district attorney asked Ventura to explain how his DNA had gotten on the woman's blouse, Ventura said that "[t]here was some consensual foreplay" and "during that time is when that would have happened." He further explained that the woman "fondled [his] penis" and his "penis was able to be exposed in that fashion because of the elastic waistband" on his shorts. When the district attorney pointed out that Ventura had initially said his penis had not been exposed, Ventura said, "You're right, I did, I did." He added, "I'm here under my own volition, and I honestly am trying to . . . I appreciate the opportunity to come and give you guys a little better color of this, okay? It's been a long, long time. I have not read through the police report in probably 15 years or whatever it's been. So, some of the events are a little sketchy to me, but I'm doing my

---

[2] A person may file a petition for a certificate of rehabilitation "in the superior court of the county in which he or she then resides or in which he or she was convicted." (§ 4852.06.) The record indicates that Ventura had lived in Monterey County continuously since 2012.

4

best to be here and be very forthright and honest with you." Ventura further stated that he was "remorseful for [his] actions."

The district attorney continued the questioning by asking Ventura to describe the 2002 incident to the best of his recollection. Ventura said that he began by kissing the woman and she was "an active participant at this juncture." He was lying on top of her and had gotten aroused. Although he did not "remember exactly if she initiated or how it transpired, [] at one point she was fondling [his] penis." When he moved to touch her breast with his hand, she objected and did not want to go any further. He "delayed, and laid on top of her for an extra 20, 30 seconds or whatever the length of time was that she wasn't able to get up." He tried to "persuade her or talk her into staying." According to Ventura, his penis was exposed, and he ejaculated "immediately preceding her wanting to get up."

At another point in the 2017 interview, Ventura said that he had been dating a woman "for a few months" and she did not know about his sex offender registration requirements. After the interview, the district attorney asked Ventura's attorney if Ventura would provide the woman's name and contact information. Through his attorney, Ventura declined to disclose the woman's name or the names of any other women he had dated during the period of rehabilitation. Later, however, Ventura provided information about three women he "had either dated or been involved with," and two of them spoke to the district attorney's investigator. Neither woman reported any inappropriate conduct by Ventura.

In January 2018, the trial court held a hearing and denied Ventura's petition. The court noted Ventura's history of sexual and violent offenses, the fact that Ventura had committed the August 2002 offense despite reportedly "living a sober life since 1997," the letters from supporters attesting to Ventura's good character, and Ventura's statement "that he is sincerely sorry and apologetic for his acts." The court denied the petition because the court was not "sufficiently convinced that lasting change is assured, in view

5

of the number and nature [] of [the] separate incidents involved over a protracted period of time."

### D. 2022 Petition to Termination Sex Offender Registration

In January 2022, the trial court granted Ventura's petition to terminate his sex offender registration requirement under section 290.5.[3]

### E. 2022 Petition for Certificate of Rehabilitation

On December 9, 2022, 61-year-old Ventura filed the petition for a certificate of rehabilitation that is the subject of this appeal (hereafter petition). Ventura attached the order vacating his May 2004 guilty pleas and dismissing the case, five letters regarding his past "psychological [and] spiritual counseling" (capitalization omitted), the order terminating his sex offender registration requirement, and 13 letters of personal support. The letters regarding Ventura's counseling show that he received psychological treatment from January 2004 to July 2004, sex offender treatment from July 2004 to June 2006, individual psychotherapy with Samuel Newman (a licensed marriage and family therapist) from December 2005 to August 2008, and spiritual counseling from a Roman Catholic monsignor, which seemingly began before Ventura's August 2002 offense and continued for some period thereafter.

In January 2023, the trial court held a hearing on Ventura's petition and directed the district attorney to conduct an investigation.[4] (See § 4852.12.)

In a letter to the trial court dated March 7, 2023,[5] Ventura wrote, "In 2002, I did something inappropriate, illegal and inexcusable for which I will deeply regret for the rest

---

[3] In a pleading addressing the instant petition for a certificate of rehabilitation, Ventura's counsel asserted that "the People declined to object" to Ventura's petition to terminate his sex offender registration requirement, "thereby confirming the lack of evidence that Mr. Ventura requires monitoring or presents a 'current threat' to community safety." (Underscoring omitted.)

[4] None of the trial court proceedings held on Ventura's petition were reported by a court reporter.

[5] Unless otherwise indicated, all dates were in 2023.

of my life. In doing so, I threw away my integrity, reputation and good name, not to mention the trust of those around me. There is no excuse for my actions and I take full responsibility for the harm I caused my victim. Not one day goes by that I do not think of the harm I caused her. Words alone cannot express the sorrow and shame I have brought upon my family and myself for my appalling and selfish acts. [¶] Since then, I have learned through therapy and continued spiritual counseling to identify what caused and led up to the conduct that resulted in my conviction; [l]ow self-esteem, isolation and dysfunctional relationships combined with an inability to deal appropriately with stress resulted in extremely poor decision making and self-destructive behavior. [¶] Over the past 21 years, I have used this insight as the foundation to become a trusted and productive member of society. I have learned that living a sober life is so much more than physical sobriety. For me, it begins with my relationship with God, the love and mutual support of my family, friends and recovery network. This growth has established in me a respect and appreciation for humanity that was not properly developed in adolescence. [¶] I have also learned to exercise integrity when dealing with anxiety in overcoming challenges that come with living each day. My focus remains steadfast in nurturing relationships with my family and friends, working hard to take care of them while seeking the most that life offers each day. I have come to learn that each new day is a gift that bring opportunities for personal growth. [¶] Through a great deal of hard work and support from all sides, I have rebuilt my life. In the future, I will continue to help others, especially those who want and need to get sober. By modeling a mature, sober and spiritual lifestyle, I believe I can continue to help many others in the community. [¶] To that end I am respectfully requesting this [c]ourt to grant my petition."

On April 7, Ventura declined to be interviewed by the district attorney. Ventura's counsel wrote to the district attorney: "Since the window you are seeking to investigate is the last five years, there is absolutely no more information [Ventura] can provide other

than what has been already submitted which is as follows: The previously recorded interview you conducted with your investigator in 2017, letters in support of his petition, an updated [q]uestionnaire, recent declarations contained in his petition and the [q]uestionnaire, and a statement to the court. Additionally, he has also responded to your question, through counsel, as to whether he has engaged in any dating relationships over the past five years in the negative. [¶] Under [] section 4852.12[, subdivision] (b), you may investigate any representation made to the court by Mr. Ventura contained in the submitted materials and we invite you to do so. However, nothing under that section compels Mr. Ventura to submit to an interview at your request. Noting that he has already done so in 2017 and has complied with your request for updates in the [q]uestionnaire, there is simply no need reiterate what has already been asked and answered in 2017."

On April 20, the district attorney filed a preliminary report and recommendation regarding Ventura's petition. The district attorney noted Ventura's refusal to be interviewed and asked the court to request that Ventura sit for an interview. The district attorney made no recommendation on the petition "because the People's investigation is incomplete." The district attorney attached several exhibits to the preliminary report and recommendation, including the People's 2017 report and recommendation (which included police reports and court documents concerning Ventura's prior misconduct and offenses), the People's supplemental report filed in January 2018, and a 2023 investigation report prepared by the district attorney's investigator.

On April 28, the trial court held a hearing and "indicated it would benefit from a further interview." Ventura agreed to be interviewed.[6]

---

[6] The clerk's minute order for the April 28 proceeding states that the district attorney "shall file an [u]pdate/[s]tatus from 2017 to present, regarding similar inquiry and focus on if [Ventura] is still active in his recovery, recovery community and current relationship with others."

8

On June 8, the district attorney interviewed Ventura (with his counsel present via video call) (hereafter 2023 interview). Ventura highlighted his good conduct since the denial of his prior petition in 2018, his "ongoing commitment to sobriety," his "five years of therapy" (including sex offender therapy and "private therapy"), his "25 years of ongoing commitment to Alcoholics Anonymous" (AA), and the work he does through AA to give back to the community. Other topics discussed during the interview included Ventura's self-employment as a fine art dealer and business consultant, August 2002 offense, address history, caretaking of his elderly mother, and lack of dating relationships since 2017.[7] Ventura declined to give the district attorney any names of women with whom he was having a nondating relationship. Despite this refusal during the interview, Ventura subsequently provided three names, and the district attorney's investigator interviewed the women.

Regarding the August 2002 offense, Ventura admitted that he had "touched a woman's breast against her will, and [] held her against her will by laying on her on the couch." When the district attorney asked Ventura to explain how he got on top of and held the woman down, Ventura answered, "Exactly that. Look, you've got the reports. I'm not here 21 years later to refute what's there, okay? Or what I shared with you in the last interview. I stand by all that." The district attorney asked Ventura, "Did you expose your penis to her?" Ventura replied, "I can't say what she saw." He added, "So, it's been 21 years and it's been a long time."

When the district attorney inquired about how Ventura's semen got on the woman's clothing, Ventura said, "I can't speak to that . . . . Look, again, you've got all the reports and I'm not trying to refute anything that's in those reports. I take full

---

[7] Ventura said, "99 [percent] of my friends are men. I primarily go to men's A.A. meetings." The district attorney acknowledged that "[a] lot of [Ventura's] friends said" he did not have time for dating because he was "just too busy, between A.A. and with [his] business and with [his] mother," with whom he lived.

responsibility for all my actions that happened in 2002. Okay?" Ventura explained further that he chose not to add any more details "[b]ecause it's been 21 years. And quite frankly, I don't remember a lot of details."

Near the end of the interview, Ventura said, "I'm not a saint, but it's like I am not the guy from 2002 and before. I'm not that guy."

On July 24, the district attorney filed a second report and recommendation on Ventura's petition. The district attorney acknowledged that since the denial of Ventura's prior petition in 2018, Ventura had continued to lead a law-abiding life, had no new convictions, and was relieved of his sex offender registration obligation. The district attorney also noted that "[e]very person the People have contacted ha[s] said nothing but good things about [Ventura]. Most talk about his involvement with AA. With his continued involvement in AA, he continues to aid others [to] strive for the sobriety he has achieved for himself. He should be commended for his commitment to help others."

Nevertheless, the district attorney expressed "concerns" about Ventura. The district attorney wrote, "[Ventura] has been interviewed two times by the People. In neither his 2017 interview nor in his recent interview has [Ventura] discussed in any depth the facts of the case that brings him to court today. In his statement to the [c]ourt, he wrote he 'did something illegal, inappropriate and inexcusable.' [Citation.] [Ventura] has yet to tell the People or this [c]ourt what that 'something is.' In both interviews he has failed to explain how his semen got on to the victim's clothing. In his recent interview when asked about that fact he said, 'I can't say what she saw.' [Citation.] The People believe these statements demonstrate [Ventura] lacks meaningful insight into his crimes. The People believe [Ventura] may feel like he is factually innocent of the crimes. His reluctance to describe the circumstances of the incident demonstrates a lack of rehabilitation." The district attorney concluded, "Although [Ventura] says he is guilty of the crimes, his continued reluctance to discuss the facts that provided culpability for these

10

crimes presents a cloud on his claimed rehabilitation. For this reason, the People recommend the petition be denied."

On July 28, Ventura filed the transcripts of his 2017 and 2023 interviews and his March 7 letter to the trial court.

On August 4, the trial court held a hearing on Ventura's petition (hereafter August 4 hearing). The court heard sworn, direct testimony from Ventura and argument from counsel.

On August 18, the trial court denied Ventura's petition in a written order. The court noted that Ventura met "the basic eligibility requirements of the statutes" for a certificate of rehabilitation, had "submitted numerous letters in support" of his petition, had "maintained a lengthy record of sobriety, service in the [AA] community, [and] service to his elderly mother," and had "continued to lead a law-abiding life since 2004." The court also noted that Ventura had been "successful in his recent application for termination of his sex offender registration requirements."

The trial court, however, "decline[d] to exercise its discretion" to grant a certificate of rehabilitation "based on the concern that [Ventura] has not fully accepted or acknowledged his wrongdoing and appears to lack insight into the underlying crimes. Although [Ventura]'s letter to the court . . . generally acknowledges he did something 'illegal, inappropriate and inexcusable,' in his interviews he cannot remember any of the details from the 2002 incident (or minimizes them) and wants to simply refer investigators to the reports. He seems unable in the present moment to summarize the crimes. Mr. Ventura's testimony at the hearing did not demonstrate to the [c]ourt his understanding of the wrongdoing.[8] This inability continues to cast a cloud over his claim of rehabilitation."

---

[8] The August 4 hearing was not reported; Ventura's in-court testimony is not in the appellate record.

11

The trial court continued, "Although this case is not completely analogous to the *People v. Blocker* (2010) 190 Cal.App.4th 438, 442–443 case, where the petitioner maintained his innocence,[9] Mr. Ventura does not appear to have fully come to terms with his prior history of sexual assaults, has not been forthcoming with information to the [d]istrict [a]ttorney's office or the court, and does not appear [to] have fully normalized his relations with women." "Although [Ventura] successfully completed and benefitted from sex offender treatment" between 2005 and 2008, it "is unclear what treatment has been sought or received after 2008." The court "acknowledge[d] the extensive work and service Mr. Ventura has performed with the AA community and 12-[s]tep groups and his spiritual counseling [with a Roman Catholic monsignor]. However, this work is not sufficiently specific or targeted to the nature of the underlying crimes."

The trial court explained that it "would welcome (1) a more active and recent course of sex offender counselling or therapy specific to Mr. Ventura's personal history and present life (that would include a complete review of the [r]eports and exhibits prepared by the [d]istrict [a]ttorney's office in 2017 and in 2023); (2) a more candid, direct and complete acknowledgment of what occurred in 2002; and (3) a record of more normalized dating or non-dating relationships with women, preferably under the supervision of a counsellor or therapist."

The trial court denied Ventura's petition "without prejudice to renewal after an additional rehabilitative period of at least 24 months."

## II. DISCUSSION

On appeal, Ventura raises four claims of error: (1) The trial court erred by improperly considering Ventura's reliance on his 2017 interview statements about the

---

**9** The *Blocker* court upheld the denial of a certificate of rehabilitation where the trial court "had a genuine concern that [the defendant]'s adamant refusal to admit any criminal culpability was a cloud on [his] claimed rehabilitation." (*People v. Blocker*, *supra*, 190 Cal.App.4th 438, 445 (*Blocker*).)

2002 offense and his unwillingness to admit acts for which he was not convicted as evidence of his alleged lack of insight. Additionally, "there is no substantial evidence to support the conclusion that [he] lacks insight into his offense." (2) The trial court erred in denying the petition upon a finding that Ventura did not have fully normalized relations with women because that finding is "standardless," "beyond 'the limitations' " of the governing statute (§ 4852.05), and "contradicted by all evidence in the record." (3) The trial court "exceeded the scope of its discretion when it conditioned granting a future petition upon Mr. Ventura's satisfaction of specific assignments that are in excess of the statutory requirements" for a certificate of rehabilitation. (4) The trial court erred as a matter of law by imposing an additional statutorily unauthorized 24-month rehabilitation period.

The Attorney General concedes that the trial court erred in setting an additional 24-month rehabilitation period. Nevertheless, the Attorney General argues this court should affirm the trial court's denial of the petition. He states that the trial court properly considered Ventura's "efforts at self-improvement, his lack of insight into the circumstances of his crimes, and his social and personal situation. Because the record shows the [trial] court relied on relevant factors in concluding [Ventura] failed to meet the high standards necessary to show he was rehabilitated, the court's decision should not be disturbed." The Attorney General further contends the trial court did not err in demanding more exacting evidence of rehabilitation and applied the correct legal standard.[10]

_____

[10] The Attorney General makes no argument that the lack of a reporter's transcript of Ventura's testimony at the August 4 hearing renders the challenge to the trial court's findings ineffectual. Ventura, likewise, does not address any aspect of his August 4 testimony in his appellate briefing. Under these circumstances, we presume (as stated by the trial court) that "Ventura's testimony at the hearing did not demonstrate . . . his understanding of the wrongdoing." (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [" 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.' "].)

*A. Legal Principles*

" ' "To enter an order known as a certificate of rehabilitation, the superior court must find that the petitioner is both rehabilitated and fit to exercise the rights and privileges lost by reason of his conviction." [Citations.]  The overall goal of the statutory scheme is "to restore civil and political rights of citizenship to ex-felons who have proved their rehabilitation." ' " (*People v. Rounds* (2024) 102 Cal.App.5th 689, 695 (*Rounds*), quoting *People v. Zeigler* (2012) 211 Cal.App.4th 638, 653.)

"A petitioner for a certificate of rehabilitation 'shall live an honest and upright life, shall conduct himself or herself with sobriety and industry, shall exhibit a good moral character, and shall conform to and obey the laws of the land.' " (*Rounds*, *supra*, 102 Cal.App.5th at pp. 695–696, quoting § 4852.05.)  A court considering the petition for a certificate may direct the district attorney to investigate the petition and report to the court.  (§ 4852.12.)  "The court also may require testimony and/or the production of records and reports relating to the petitioner and the crime, which may include the record of trial, and the petitioner's prison, parole, and probation records.  (§ 4852.1, subd. (a).)  Section 4852.13 gives courts discretion to decide whether a petitioner has demonstrated by 'his or her course of conduct his or her rehabilitation and his or her fitness to exercise all of the civil and political rights of citizenship.' (*Id*., subd. (a).)" (*Rounds*, at p. 696.)

" 'The hurdles erected by the Legislature to obtain a certificate of rehabilitation are not intended to be easily surmounted.  The trial courts are entrusted with the responsibility, in the exercise of a sound discretion, to ensure that the strict statutory standards for rehabilitation are maintained.' " (*Rounds*, *supra*, 102 Cal.App.5th at p. 696, quoting *Blocker*, *supra*, 190 Cal.App.4th at p. 445.)

"The issuance of a certificate of rehabilitation must be immediately reported to the Department of Justice, which in turn must immediately record the facts on the petitioner's criminal record and transmit them to the Federal Bureau of Investigation.  (§ 4852.17.)  A certificate of rehabilitation, when transmitted to the Governor, constitutes an application

14

for a full pardon; the Governor may issue a pardon based on the certificate of rehabilitation without further investigation.  (§ 4852.16, subd. (a).)  To grant a petition for a certificate of rehabilitation is in essence 'a personal representation to the Governor' by the court that the petitioner is worthy of pardon." (*Rounds*, *supra*, 102 Cal.App.5th at p. 696.)

" ' "[T]he superior court conducts a thorough inquiry into the applicant's conduct and character from the time of the underlying crimes through the time of the certificate of rehabilitation proceeding.  [Citations.]  The standards for determining whether rehabilitation has occurred are high.  [Citations.]  The decision whether to grant relief based on the evidence is discretionary in nature. . . .  [T]here is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court." ' " (*Rounds*, *supra*, 102 Cal.App.5th at p. 696.)

" 'Because "rehabilitation logically assumes guilt" [citation], numerous state and federal jurisdictions accept that "a court may properly consider a defendant's refusal to acknowledge guilt when evaluating the defendant's rehabilitation potential because acknowledgement of guilt is a critical first step towards rehabilitation." ' " (*Rounds*, *supra*, 102 Cal.App.5th at p. 696.)

### B.  Standard of Review

" '[R]eview of a grant or denial of a certificate of rehabilitation is confined to an abuse of discretion standard.'  [Citation.]  A trial court abuses its discretion when the decision exceeds the bounds of reason [citation], or when the court is mistaken about the scope of its discretion [citation].  ' " ' " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' " ' " '  [Citation.]  ' " ' "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles.  It is not a mental

15

discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' " ' [Citation.] Only if we can conclude as a matter of law that the court's expressed concerns regarding the lack of [petitioner]'s rehabilitation 'was not a legitimate consideration in the exercise of its discretion' may we conclude the court exceeded the bounds of reason in denying the petition." (*Rounds*, *supra*, 102 Cal.App.5th at p. 695.) Further, "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) The burden is on the appellant to establish an abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)

*C. Analysis*

We turn first to Ventura's challenge to the trial court's finding that he "does not appear [to] have fully normalized his relations with women."

Ventura asserts that since 2004, his conduct has conformed to the statutory requirements stated in section 4852.05, including with respect to his interactions with women.[11] He further asserts that "[i]n the context of these statutory requirements, 'normalized relations with women' is not reasonably related to 'rehabilitation' " and is "so vague and subjective as to be 'whimsical' and incapable of meaningful review on appeal." Additionally, Ventura contends "there is [] no evidence in the record from which the trial court could conclude . . . that [he] 'does not appear to have fully normalized his relationships with women.' " He maintains that he is now in his sixties, has not dated in years, and has chosen to remain single. "There is no reasonable basis to

[11] Section 4852.05 provides in full: "The person shall live an honest and upright life, shall conduct himself or herself with sobriety and industry, shall exhibit a good moral character, and shall conform to and obey the laws of the land." (See also § 4852.13, subd. (a) [a court may declare "the petitioner has been rehabilitated" "if after hearing, the court finds that the petitioner has demonstrated by his or her course of conduct his or her rehabilitation and his or her fitness to exercise all of the civil and political rights of citizenship"].)

find, as the trial court impliedly concluded, that one cannot be rehabilitated outside of a romantic or dating relationship. This is especially true where, as here, all of the evidence submitted by and from women in connection with the [p]etition is positive."

The Attorney General responds that in the context of Ventura's "past repeated sexual abuse of women," normalized relations with women "is certainly germane to a determination of whether [Ventura] 'live[d] an honest and upright life' and 'exhibit[ed] a good moral character' " under section 4852.05. The Attorney General further asserts that the lack of evidence that Ventura sought or received any therapy or treatment after 2008, "coupled with [his] unwillingness to be fully forthcoming about the circumstances underlying his sexual misconduct, reasonably suggested to the [trial] court that [Ventura] had not 'fully normalized his relations with women.' " In addition, the Attorney General contends that the trial court's ruling does not amount to an abuse of discretion because it "was not based on just one factor" but "on a consideration of all of the evidence presented by the parties and a weighing of all statutory factors," including Ventura's "efforts at self-improvement, evidence of his lack of insight into the circumstances of his crimes or complete acceptance of responsibility, and his social and personal circumstances during the period of rehabilitation."

"We cannot and will not disturb the lower court's decision on appeal absent a clear abuse of that discretion" that "is 'manifest' and results in a 'miscarriage of justice.' " (*People v. Lockwood* (1998) 66 Cal.App.4th 222, 227.) The instant case presents such a circumstance.

Preliminarily, we harbor serious concerns about the legality of a trial court relying on a petitioner's lack of "fully normalized [] relations with women" as a factor to deny his petition. That standard of behavior appears dissociated from the statutory requirements of "liv[ing] an honest and upright life" and "exhibit[ing] a good moral character" (§ 4852.05) and so ambiguous as to be susceptibility to nonuniform application. Nevertheless, we need not reach Ventura's challenge to the legality of the

17

trial court's reliance on his apparent lack of fully normalized relations with women to reject his petition. Assuming without deciding the legal propriety of that factor, the instant record does not support the trial court's finding in that regard.

The record includes significant evidence that Ventura's relations with women are, in fact, normalized. In 2016, therapist Samuel Newman opined that as of August 2008, "Mr. Ventura [was] very healthy and normative with regard to his beliefs, attitudes and behaviors relating to dating, socializing and human sexuality." Furthermore, during the investigations in 2017 and 2023, the district attorney's investigator interviewed five women who knew Ventura, one of whom dated him. A woman interviewed in October 2017 reported that she was "good friends" with Ventura and described him as "trustworthy, carrying [*sic*], and very supportive." She said she "trusts him 'completely' " and "noted that [he] has never been inappropriate with her." She also recalled Ventura telling her "years ago" that he had been arrested for a "minor incident [when] he was young," and she was aware of Ventura's active participation in AA.

Another woman interviewed in October 2017 reported that she met Ventura at a gym in April 2017. She and Ventura "became friends," seeing each other a couple of times per week for about three months. "[S]he enjoyed his company," and later, in September 2017, they started to date. The woman described Ventura as "mature" and said that he "always treated her with respect." She was aware of Ventura's active membership in AA but did not know if he had previously been arrested or spent time in jail.

In July 2023, a woman who is the spouse of Ventura's business associate told the district attorney's investigator that she knew Ventura for about 15 years and "described [him] as principled, straight forward, rock solid, and honest." Additionally, her husband reported that "Ventura is always respectful around women, including [his] wife and his adult daughter who also works at [his] business."

18

The district attorney's investigator interviewed another woman who met Ventura through AA around 2002–2003 and speaks with him "a couple times a month." She reported that "Ventura was like a brother to her and described him as an honest and good person who she would trust with her life." She added that "Ventura has always shown great integrity and that his word is his bond. . . . [S]he would call him in a heartbeat if she needed help. . . . 'It's an honor to call him a brother and a friend.' "

A third woman told the district attorney's investigator in July 2023 that she met Ventura through AA approximately 24 years earlier, speaks with him "once every couple [of] months," and occasionally visited with him (along with her husband). She said that "Ventura is always respectful around women." She explained that she "would go to Ventura for help knowing that [he] would not 'come on to' her and that he would not try to take advantage of her. . . . [S]he felt safe confiding in Ventura." She described Ventura as "friendly" and "trustworthy" and said that "she valued his friendship."

Given the positive evidence concerning Ventura's interactions with women after his 2002 offense, the fact that Ventura had not received sex offender therapy or treatment since 2008 does not demonstrate that he has failed to fully normalize his relations with women. The affirmative proof in the record shows Ventura having had normal relations with women even in the absence of therapy targeted to sex offenses. Although participation in such therapy might bolster a sex offender's ability to relate more normally to persons sharing his victim's gender, it would be speculative to conclude on this record that Ventura has less than "fully normalized" relations with women because he has not recently participated in sex offender therapy. (See *In re Ryner* (2011) 196 Cal.App.4th 533, 551 (*Ryner*) [rejecting Governor's reliance on speculation that the inmate might need "more" anger management therapy in the absence of any evidence of a current, or even recent, anger problem].)

We likewise are not persuaded by the Attorney General's contention that Ventura's "unwillingness to be fully forthcoming about the circumstances underlying his

19

sexual misconduct, reasonably suggested . . . [he] had not 'fully normalized his relations with women.' " It is settled that "[w]hether the defendant has admitted his culpability in the underlying crime is a factor the trial court may appropriately consider when ruling on a petition for a certificate of rehabilitation." (*Rounds*, *supra*, 102 Cal.App.5th at p. 701.) Further, as mentioned *ante* (see pt. I.E.), the trial court made several findings about Ventura's lack of candor and insight into the underlying offense. Nevertheless, the Attorney General fails to explain, and we cannot discern how Ventura's unwillingness to be fully forthcoming about the 2002 offense (presumably by failing to admit attempted forcible oral copulation) proves that he does not have fully normal relations with women.

Although candor about and acknowledgement of one's misconduct relates to "liv[ing] an honest and upright life" and "exhibit[ing] a good moral character" (§ 4852.05), we do not perceive a reasonable nexus between Ventura admitting that he attempted forcible oral copulation (assuming its truth) and him presently having fully normalized relations with women. As detailed, the uncontradicted evidence shows that Ventura has had ordinary relations with women for many years. He also has not dated women since 2017 and maintained in his 2023 interview that "99 [percent] of [his] friends are men." The record does not suggest that Ventura's behavior toward women has been affected by his unwillingness or inability to be completely frank about his misconduct. Under these circumstances, any discounting of Ventura's overtly normal relationships with women based on his failure to be fully forthcoming about his 2002 offense would amount to improper speculation. Such discounting would rest on an unwarranted, blanket assumption that any relationship Ventura has with a woman cannot be completely normal unless he admits having committed attempted forcible oral copulation. (See *In re Moses* (2010) 182 Cal.App.4th 1279, 1307, 1309–1310 [Governor failed to articulate rational link between discrepancies in the inmate's version of events and current dangerousness]; *Ryner*, *supra*, 196 Cal.App.4th at p. 548 ["it is settled that the Board [of Parole Hearings] may not base its findings on hunches, speculation, or

20

intuition"]; see also *Dobson v. Industrial Acc. Com.* (1952) 114 Cal.App.2d 782, 787 ["a finding of fact must be an inference drawn from evidence rather than on a mere speculation as to probabilities without evidence"].)

The trial court's unsupported finding that Ventura appears to lack fully normalized relations with women is central to its decision to deny the certificate of rehabilitation. Although the trial court provided other reasons for denying Ventura's petition, the court reiterated its unsupported finding when stating that it "would welcome" "a record of more normalized dating or nondating relationships with women, preferably under the supervision of a counsellor or therapist." This coupling of the unsupported finding with an invitation for further evidence of normalized relationships, in conjunction with the court's erroneous imposition of an additional 24-month period of rehabilitation,[12] demonstrates the importance of the court's unfounded perception about Ventura's less than fully normalized relations with women. Under these circumstances, we conclude the trial court abused its discretion by finding that Ventura apparently had not fully normalized his relations with women, and the denial of Ventura's petition based in substantial part on that unsupported finding resulted in a miscarriage of justice.

Notwithstanding our reversal of the trial court's order, we do not direct the trial court to grant Ventura's petition. In denying the petition, the trial court relied on reasons other than the unsupported finding regarding normalized relations with women, including its finding that Ventura's testimony failed to demonstrate his "understanding of the wrongdoing." Given the trial court's other reasons for denying the petition, we decide the matter should be remanded for the trial court to determine anew whether, without the unsupported finding, Ventura has demonstrated his entitlement to a certificate of

---

[12] As noted *ante*, the Attorney General concedes that the trial court erred in setting an additional 24-month rehabilitation period for Ventura. (See § 4852.11 [a court may determine a new period of rehabilitation not to exceed the original period of rehabilitation "[u]pon receiving satisfactory proof of a violation" of law]; see also *People v. Failla* (2006) 140 Cal.App.4th 1514, 1518, 1520–1521.)

21

rehabilitation. (See § 4852.13, subd. (a); see also *Blocker*, *supra*, 190 Cal.App.4th at p. 445.) Further, given the remand, we do not address Ventura's other challenges to the trial court's order. Ventura may raise those arguments (should he choose to do so) during proceedings on remand.

### III. DISPOSITION

The August 18, 2023 order denying Ventura's petition for a certificate of rehabilitation and pardon is reversed. The matter is remanded for the trial court to further consider whether, consistent with this opinion, Ventura has met the standards for a certificate of rehabilitation and pardon.

_____
                   Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Grover, J.

**H051506**
*People v. Ventura*